**Richard D. MEDING, Plaintiff,**

v.

**Lester HURD, individually and in his capacity as Mayor of the Town of Blades, Delaware, Paul Burton, Joseph Barnes, James W. Hastings, Earl E. Chaffinch and William Sipple, individually and in their capacity as councilmen of the Town of Blades, Delaware, and the Town of Blades, Delaware, a municipal corporation of the State of Delaware, Defendants.**

Civ. A. No. 82–170 CMW.

United States District Court, D. Delaware.

April 19, 1985.

Robert C. Wolhar, Jr. and Edward C. Gill, of Wolhar & Associates, Georgetown, Del., for plaintiff.

John E. Messick and Richard F. Stokes of Tunnell & Raysor, Georgetown, Del., for defendant, Town of Blades, Del.

William M. Chasanov of Brown, Shiels & Chasanov, Georgetown, Del., for defendants, individual councilmen.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

■ This is an action for damages and equitable relief under 42 U.S.C. § 1983 (hereinafter "§ 1983") brought by Richard Meding, the former Chief of Police of Blades, against the Town of Blades, and individual town officials, namely, the Mayor and members of the Town Council. The town officials are sued both in an official capacity and in an individual capacity. Meding alleges that the Town and the town officials deprived him of constitutionally protected property and liberty interests in connection with the termination of his employment as Police Chief. Both sides have completed discovery and all parties have moved for summary judgment.[1]

---

1. The parties have submitted nineteen docket items in the form of briefs and appendices in connection with their motions for summary judgment which incorporate the parties' earlier submissions in connection with a motion to dismiss. Because of the number of submissions, the Court, for citation purposes, will refer to the relevant submission by its docket item ("D.I.") number alone followed by the relevant page.

Plaintiff has made certain evidentiary objections to exhibits contained in the appendices supplied by defendant Town of Blades. The objections involve:
1. A newspaper article reporting remarks made by Chief Justice Burger, D.I. 30:80.
2. Minutes of Blades' Council meeting of 5/19/80, D.I. 30:82 and D.I. 40:5.
3. Delaware State Hospital documents, D.I. 30:87 and D.I. 40:11.
4. Beebe Hospital documents, D.I. 30:98 and D.I. 40:25.
The plaintiff objects to the first item on grounds of relevancy and to the remaining items as hearsay.

## FACTS

Blades is a small town of about seven hundred inhabitants. The Town is administered by the Mayor and the Town Council. The Town Council meets once a month and the elected officials receive a nominal salary for their services. During the events giving rise to this lawsuit, the Town employed three individuals full-time, which included the Chief of Police.

Meding was Chief of Police prior to his discharge on May 12, 1980. He had several years of experience with the police force before his elevation to Chief of Police in July of 1977. The two sides in this lawsuit dispute the quality of Meding's performance and his continued competence to serve in that position. The Court sees no benefit in repeating these allegations. For purposes of plaintiff's motion, the Court will assume that the Town Council had justifiable reasons for terminating Meding and for purpose of defendants' motion, the Court will assume that Meding was fit for service.

The train of events that form the basis of Meding's present lawsuit were brought to a head over a disagreement among the parties regarding the police department's budget. On April 14, 1980, the plaintiff submitted his resignation as Chief of Police to take effect in sixty days and conditioned the resignation on the Town's agreement to pay him certain benefits which he claimed were owed. The resignation was drafted with the advice of an attorney and submitted with the resignation was a doctor's excuse addressed "To Whom It May Concern," informing the reader that the plaintiff was in need of a two week rest for exhaustion. The plaintiff has not worked for the Town of Blades since his resignation was submitted.

The Town Council of Blades did not act on the plaintiff's resignation until May 12, 1980 (the date of the next regularly scheduled council meeting). After the regularly scheduled meeting on May 12th, the Town Council met in executive session to consider Meding's resignation. Rather than accept his resignation and implicitly agree to the plaintiff's request for payment of benefits, the Town Council chose, instead, to accept his resignation under a section from the Town Ordinances that provided that an unexcused absence for more than three days shall be deemed a resignation.[2] The plaintiff alleges that he received no notice of the May 12th meeting, nor was he provided with a hearing prior to his termination.[3]

Plaintiff concedes that items 2–4 fall within the hearsay exceptions set out in Federal Rules of Evidence 803(6) and 803(8), but contends that each record contains hearsay that does not fall within any hearsay exception, and thus, constitutes hearsay within hearsay. The Court cannot agree with the plaintiff. Although the records contain reports of statements made by other individuals, the statements contained in the reports were not offered in evidence to prove the truth of the matter asserted and therefore were not hearsay. Accordingly, plaintiff's objections on grounds of hearsay are overruled. The Court, in any event, notes that it has not relied on items 3 and 4 in its decision, and referred to item 2 only for a minor point.

Plaintiff's objection to item 1 on grounds of relevancy is sustained.

2. The Town's choice of terminology regarding the severance of Meding's employment with the Town has an unfortunate potential for confusion. According to the Town, there were two resignations: the "formal" one tendered by Meding which was rejected by the Town Council and the "implicit" one deemed to exist because of Meding's allegedly unexplained absence. The merit of plaintiff's claim, however, does not hinge on the Town's choice of terminology. The relevant substantive difference between these two types of resignations is that the "formal" resignation was at the request of the plaintiff, while the "implicit" resignation was on terms lacking plaintiff's consent. For purposes of clarification, the Court will refer to the "implicit" resignation throughout this opinion as a termination.

3. Counsel for defendant Town of Blades conceded at oral argument that no formal notice was given nor was any attempt made to send notice to Meding's last known address. The separate Answers of the Town of Blades and the individual defendants, however, attempt to establish a legally cognizable defense, namely, that plaintiff left no forwarding address, and that plaintiff knew when the regularly scheduled Town Council meetings were held. *See* Complaint ¶ 10 (D.I. 1).

Although Meding's termination forms the crux of the Complaint, the Complaint also contains allegations regarding three subsequent incidents involving the defendants which could serve as bases for independent claims under § 1983. The first incident concerns a newspaper article in the Seaford Leader on May 14, 1980, that reported the Town Council had accepted Meding's resignation because of unexcused absences. D.I. 31A:12. Meding claims that the article's averment that his absence was unexplained is false and that the defendants were the source of the report. Further, it is alleged that public dissemination of the purported reason for his termination damaged the plaintiff's reputation.

The second incident occurred after Meding left his post as Police Chief. The plaintiff began working for a store, Guns and Goodies, owned and operated by Robert Smith. Smith informed Meding that unidentified individuals had come to him seeking to have Meding fired. After working only a week, Meding left contending that these individuals' conduct pressured him to quit. Mr. Smith, however, maintains that Meding was welcome to stay on. D.I. 30:64.

On June 23, 1980, Meding brought an action in the Superior Court of Delaware in and for Sussex County against the Town of Blades. The initial complaint sought to recover accrued benefits from his employment as Police Chief, including pension and life insurance benefits and compensation for vacation time, sick leave, and severance. The complaint was amended in early November, 1980 to seek damages for illegal and wrongful termination. The case eventually went to trial in September of 1981 and the plaintiff received a judgment on a general verdict for nearly eight thousand dollars, a significant amount but substantially less than the amount that Meding sought.

Prior to the state court proceeding coming to trial, the Town of Blades and its Town Council asked the Attorney-General to investigate the possibility that Meding had falsified his reported overtime. This investigation was reported in the papers, and according to the plaintiff, the defendants sought the investigation and made it public solely to harass him. This represents the third incident following Meding's termination that might serve as a basis for a civil rights claim.

Plaintiff's counsel, in oral argument, expressly disavowed that the second or third incidents were meant to establish separate claims for liability under 42 U.S.C. § 1983 and thus, the Court will disregard those facts with respect to the cross-motions for summary judgment now before it.[4] What remains are two separate due process claims: one based on the termination which plaintiff contends deprived him of a constitutionally protected property interest; and the other based on the report contained in the Seaford Leader on May 14, 1980 which plaintiff alleges deprived him of a constitutionally protected liberty interest.

DISCUSSION

Actions by discharged public employees brought under § 1983 have the potential for creating complex jurisdictional questions because the facts underlying the federal cause of action will usually support a state action sounding in tort. The difficulties created by dual jurisdiction are well-known, and for the most part federal law has evolved to resolve the most significant of these. Typically, the appropriate disposition of these federal actions may involve questions of state law. And to this extent, the present action entails questions that are no different from the kinds of questions addressed by federal courts sitting in other state jurisdictions. What makes this particular case so difficult and also unusual is that Delaware is one of the few remaining state jurisdictions that continues to adhere to the traditional separation of law and equity. This fact of Delaware law gives rise to a host of special problems

---

4. Plaintiff's counsel reserved his right to subsequently argue to the Court that these incidents may be used as evidence at trial to establish the "willful" and "wanton" conduct of the defendants.

which the Court must address in considering the numerous issues raised by the parties' respective motions.

### 1. Claim Preclusion [5]

■ Defendant Town of Blades contends that the pending action is precluded by the plaintiff's previously obtained state court judgment. The Full Faith and Credit Statute, 28 U.S.C. § 1738, requires federal courts "to give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School District Board of Education*, 465 U.S. 75, ——, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). Thus, the scope of a state court judgment's preclusive effect is ultimately a question of the law of the State in which the judgment was rendered. *Marrese v. American Academy of Orthopaedic Surgeons*, —— U.S. ——, ——, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985). Actions brought under § 1983 are no exception to the requirements of the Full Faith and Credit Statute. *Migra v. Warren City School Dist., supra*, 465 U.S. at —— – ——, 104 S.Ct. at 897–98. Accordingly, the Court must look to the law of Delaware and its doctrines of claim preclusion to determine whether plaintiff's present action is precluded.

■ Delaware subscribes to the modern transactional view of claim preclusion. *Maldonado v. Flynn*, 417 A.2d 378, 381–82 (Del.Ch.1980); *see generally Restatement (Second) of Judgments 2d* §§ 24–26 (1980). Under this view, a prevailing plaintiff is not permitted to relitigate his original claim, *Restatement (Second) of Judgments 2d* § 18 (1980), "if the pleadings framing the issues in the first action would have permitted the raising of the issue sought to be raised in the second action." *Ezzes v. Ackerman*, 43 Del.Ch. 420, 234 A.2d 444, 456 (1967). Relying on a draft of the subsequently adopted *Restatement (Second) of Judgments* § 24, Vice-Chancellor Hartnett offered a detailed explication of the modern view of claim preclusion accepted by Delaware courts.

> The modern transactional view of the doctrine ... does not require that the claim subsequently asserted be based on a same cause of action to be barred, but permits the doctrine to be invoked to bar litigation between the same parties if the claims in the later litigation arose from the same transaction that formed the basis of the prior adjudication ... The determination, therefore, whether the doctrine shall be invoked is now based on the underlying transaction and not on the substantive legal theories or types of relief which are sought. Under the modern rule, ordinarily, a transaction gives rise to only one claim regardless of the number of ways that the claim may be asserted.

*Maldonado v. Flynn*, 417 A.2d 378, 381 (Del.Ch.1980) (citations omitted).

To determine, then, whether the plaintiff's present action against the defendant Town of Blades is precluded by state law, requires a comparison of the operative facts underlying plaintiff's federal claims, and his prior state court action. Meding's federal causes of action rest on two events: his termination by the Town of Blades on May 12, 1980, and the allegedly false re-

---

5. In this opinion, the Court will adopt the Supreme Court's preferred terminology for discussing res judicata and collateral estoppel. The Supreme Court has recently begun to use the term "claim preclusion" instead of res judicata to signify the preclusive effect of a prior judgment to foreclose litigation on matters or claims that should have been raised in an earlier suit. The term "issue preclusion" is used to encompass traditional notions of collateral estoppel, namely, the effect of a judgment in foreclosing litigation of matters or issues that have been actually litigated and decided. *See Migra v. Warren City School District Board of Education*, 465 U.S. 75, —— n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984); *Marrese v. American Academy of Orthopaedic Surgeons*, —— U.S. ——, —— n. 1, 105 S.Ct. 1327, 1329 n. 1, 84 L.Ed.2d 274 (1985); *see generally* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4402 (1981). The Court carries this modern terminology over to its discussion of state law even though state court decisions tend to describe the same concepts using the more traditional terms of res judicata and collateral estoppel.

ports appearing in the Seaford Leader on May 14, 1980. The events surrounding the Town Council's termination of Meding form a common nucleus of fact with respect to each of his federal claims.

Plaintiff's original complaint in the state court action merely sought accrued wages and benefits owed to the plaintiff as of April 14, 1980 along with two weeks severance pay. Thus, as originally filed, the state suit dealt with something entirely independent of the actual termination. Later, however, Meding amended his complaint to allege that "[p]laintiff was illegally and unlawfully terminated from his employment [sic] Chief of Police of the Town of Blades" on or about April 14, 1980. D.I. 30:22, 23 (Motion to Amend filed October 28, 1980 and Order granting plaintiff's motion entered November 7, 1980). This amendment raised the issue of the propriety of Meding's termination squarely before the state court. Thus, the conclusion is inescapable that the underlying transaction in both actions is precisely the same.

Generally, a common underlying transaction in two separate actions is sufficient to bar a second suit if judgment has been obtained in the first. There are, however, notable exceptions to this general rule. The *Restatement (Second) of Judgment* § 26 & comment c (1980) recognizes one such exception where limitations on one court's subject matter jurisdiction impairs the plaintiff's opportunity to seek certain forms of relief that are obtainable in a second court.[6] This exception is of special importance in jurisdictions such as Delaware in which law and equity are not merged because the rules underlying the transactional approach to preclusion are more consonant with a unified system of law and equity. *See Restatement (Second) of Judgments* § 25 comments f, i (1980); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice* and Procedure § 4410 (1981). Although the need for such an exception in Delaware is fairly compelling, the Court must ultimately be guided by whether Delaware courts recognize such an exception in applying its doctrine of claim preclusion.

Defendant Blades contends there is no basis for inferring such an exception to the general rule of claim preclusion in Delaware because under 10 *Del.C.* § 1902, the plaintiff could have brought any equitable claims arising out of his Superior Court action in Delaware Chancery Court without initiating a second cause of action.[7] This argument is flawed in that it confuses two distinct issues. Although the enabling provision of 10 *Del.C.* § 1902 may permit the transfer of actions from courts lacking jurisdiction to courts of competent jurisdiction, such a provision does not resolve the essential issue presently before the Court, namely, whether state law precludes a separate action in equity after a judgment has been obtained in an action at law where both actions arise from a common transaction. While there is no authoritative declaration from Delaware's highest court with respect to this issue, sufficient sources of state law exist from which to forecast Delaware law.[8] At least three considerations

---

**6.** Plaintiff faced no bar in bringing his § 1983 in state court because federal courts' jurisdiction is not exclusive over such claims. *See Martinez v. California*, 444 U.S. 277, 283 n. 7, 100 S.Ct. 553, 557 n. 7, 62 L.Ed.2d 481 (1980).

**7.** Section 1902 provides in part:

REMOVAL OF ACTIONS FROM COURTS LACKING JURISDICTION

No civil action, suit or other proceeding brought in any court of this State shall be dismissed solely on the ground that such court is without jurisdiction of the subject matter, either in the original proceeding or on appeal. Such proceeding may be transferred to an appropriate court for hearing and determination, provided that the party otherwise adversely affected, within 60 days after the order denying the jurisdiction of the first court has become final, files in that court a written election of transfer, discharges all costs accrued in the first court, and makes the usual deposit for costs in the second court....

**8.** For a discussion of the methods federal courts should use in prognosticating state law, see generally *Jones & Laughlin Steel Corp. v. Johns-Mansville Sales Corp.*, 626 F.2d 280, 284 (3d Cir.1980); *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 662–63 (3d Cir.), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980).

suggest that Delaware's highest court would permit a party seeking equitable relief to maintain a separate cause of action even though the party had obtained a final judgment at law with respect to claims arising out of the same underlying transaction.

First, Delaware courts have expressly endorsed the sections of the *Restatement* enunciating this exception. *See Maldonado v. Flynn*, 417 A.2d 378, 381–83 (Del.Ch. 1980) (citing corresponding sections in Tentative Draft No. 5 to *Restatement (Second) of Judgments* § 26(c) & comment c (1980)). Moreover, Delaware courts have actually applied the exception in slightly different contexts from the way in which plaintiff seeks to employ it here. Thus, "where it appears that a plaintiff could not for jurisdictional reasons have presented his claim in its entirety in a prior adjudication, the rule against claim splitting will not be applied to bar th[e] claim." *Maldonado v. Flynn*, 417 A.2d 378, 383 (Del.Ch.1980); *cf. Hughes v. Trans-World Airlines*, 336 A.2d 572, 575–78 (Del.1975) (holding that federal court decision which did not reach the merits of plaintiff's federal law claims did not bar state court action of related claims even though lower federal court might have exercised pendent jurisdiction if state claims had been presented to the federal court), *cert. denied*, 423 U.S. 841, 96 S.Ct. 72, 46 L.Ed.2d 61 (1975).

Second, 10 *Del.C.* § 1902 provides little support for defendants' position. The defendants contend that 10 *Del.C.* § 1902 requires a plaintiff to press all his claims for relief in a single action without regard to the subject matter jurisdiction of the state court in which he seeks to assert his claims and then to seek transfer of any part of the subject matter over which the original court lacks jurisdiction to an appropriate court. Not only is defendant's interpretation unsupported by the statute's literal wording, but the Delaware Supreme Court has repeatedly construed the statute's purpose as essentially remedial, that is, to protect a plaintiff's action from dismissal when he has sought relief in the wrong court. *See Wilmington Trust Co. v.*

*Schneider*, 342 A.2d 240, 242 (Del.1975); *Family Court of Delaware v. Giles*, 384 A.2d 623, 624 (Del.1978). There is simply no authority for the proposition that 10 Del.C. § 1902 bars a plaintiff from separately prosecuting claims for one form of relief in one state court after obtaining a judgment in another state court. Indeed, Delaware courts have permitted separate actions at law and at equity arising out of the same transaction. In *Stephenson v. Capano Development, Inc.*, 462 A.2d 1069, 1070 (Del.1983), the Delaware Supreme Court held that, although issue preclusion applied between an action for specific performance before the Chancery Court and subsequent proceedings for fraud before the Superior Court involving common issues of fact, the Chancery Court's findings did not dictate a favorable verdict for plaintiff on the fraud issue before the Superior Court. By implication, plaintiff's subsequent action for fraud before the Superior Court was not precluded by plaintiff's prior judgment on another claim arising out of the same transaction before the Chancery Court.

■ Finally, contrary to defendant's assertion, Delaware still steadfastly adheres to the separation of law and equity. Defendants argue that just as a Chancery Court may proceed to decide an entire controversy including questions of law once it obtains equity jurisdiction over a matter, *Wilmont Homes, Inc. v. Weiler*, 42 Del.Ch. 8, 202 A.2d 576, 580 (1964); *Wilmington Trust Co. v. Barry*, 397 A.2d 135, 138 (Del.Super.1979), the Superior Court possesses latent powers to award equitable relief analogous to the Chancery Court's power to decide legal issues. Defendants' novel position was decisively rejected by the Delaware Supreme Court in *Monroe Park v. Metropolitan Life Insurance Co.*, 457 A.2d 734 (Del.1983) (holding that Superior Court could not enter judgment in an equitable action to foreclose a mortgage). *Compare* Delaware Constitution, Article IV, Section 7 (describing Superior Court jurisdiction in matters of common law) *with* Delaware Constitution, Article IV, Section

10 (describing Chancery Court's jurisdiction in matters of equity).[9]

■ Although the prior state court judgment obtained by Meding arose out of the same operative facts that form the basis of the claims he presently seeks to assert in federal court, the prior state court judgment precludes only subsequent claims in which the Superior Court had jurisdiction to award the relief which plaintiff presently seeks. Some of the remedies presently sought by plaintiff were available in Superior Court while others were not. Thus, the prior judgment's preclusive effect on the present action is only partial.

■ Delimiting the precise scope of the prior judgment's preclusive effect requires an analysis of the various forms of relief plaintiff presently seeks against the Town of Blades. Plaintiff seeks statutory damages including compensation for mental anguish, reinstatement or front pay,[10] back pay, and injunctive relief.[11] The Superior Court had subject matter jurisdiction over matters of common law and the concomitant power to award compensatory damages (what plaintiff refers to as "statutory damages"). Thus, Meding's present claims arising from his termination are precluded insofar as they seek compensatory damages.[12] On the other hand, the prior state judgment is not a bar with respect to plaintiff's claims insofar as he seeks equitable relief such as reinstatement because, under state preclusion law, a party's equitable claims are not barred by a prior judgment of the Superior Court.

■ The difficult question is whether plaintiff's claims for back pay and front pay are precluded by his prior state court judgment. Admittedly, under federal law, both back pay and front pay are regarded as equitable remedies. *See Gurmankin v. Costanzo*, 626 F.2d 1115, 1123 (3d Cir. 1980), (back pay in § 1983 actions, just as in Title VII actions, is appropriately classified as an equitable remedy), *cert. denied*, 450 U.S. 923, 101 S.Ct. 1375, 67 L.Ed.2d 352 (1981); *cf., Goss v. Exxon Office Systems*, 747 F.2d 885, 890 (3d Cir.1984) (front pay should be regarded as an equitable remedy in Title VII cases). In an action for wrongful termination at common law, however, back pay and front pay are compensatory in nature for consequential damages arising from the unlawful deprivation of employment. *See* 4A. Corbin, *Corbin on Contract* § 958 (1951) (5th Printing 1979) ("If an employee is wrongfully discharged by his employer, this is a total breach of which only a single action lies, judgment being obtainable for all wages past due and for all future promised wages less what can be earned by reasonable effort in similar employment.");[13] *cf. Emmett S. Hickman Co. v. Emilio Capaldi Developer, Inc.*, 251

---

**9.** There are exceptional circumstances in which the Superior Court functions in an appellate capacity to review an award of equitable relief when so provided by statute. For example, 29 *Del.C.* § 5949 allows the district court to review an order of reinstatement of a state employee. *See State v. Berenguer*, 321 A.2d 507 (Del.Super.1974). No comparable provision applies with respect to municipal employees.

**10.** Although plaintiff does specifically ask for front pay, the Third Circuit recognizes front pay as an equitable alternative to reinstatement. *Goss v. Exxon Office Systems*, 747 F.2d 885 (3d Cir.1984).

**11.** Plaintiff concedes that he is not entitled to seek punitive damages against the Town of Blades. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).

**12.** Although the plaintiff's attempt to obtain damages for mental anguish in his state contract action proceeding, *see* Appendix to Blades' Opening Brief 55 (trial transcript) (sustaining defendants' objections to questions regarding mental suffering); his inability to obtain the requested form of relief stemmed from theory of recovery advanced by plaintiff rather than any bar to recovering damages for mental suffering *per se* in Superior Court. Thus, plaintiff's present efforts to obtain relief that was readily available is foreclosed by claim preclusion.

**13.** Ironically, federal courts have relied on the availability of back pay and future pay at common law to infer the existence of a similar remedy in civil rights actions causing the same sort of consequential injury. *Burt v. Board of Trustees of Edgefield County School District*, 521 F.2d 1201, 1207 (4th Cir.1975) (per curiam) (sep. op of Winter, J.)

A.2d 571, 573 (Del.Super.1969) (future profits were properly includable as an item for damages in an action for breach of contract).

Thus, Meding could have sought past and future wages for his wrongful termination in Superior Court. In fact, Meding actually did seek both forms of relief in his state court action. The issue of lost wages up until the time of trial, September 8, 1981, was submitted to the jury. *See* D.I. 30:76 (extract from jury charge [page 181 of Superior Court trial transcript.]).[14] The loss of all future wages also was raised in plaintiff's amended complaint. *See* D.I. 30:22. The demand for all future lost wages, however, was not included in the pretrial stipulation nor was it submitted to the jury. *See* D.I. 31:25 (Pretrial Stipulation).

Plaintiff contends that he faced a jurisdictional bar in his prior State Court action to maintaining his federal cause of action for lost wages because federal law characterizes compensation for lost wages as a form of equitable relief. Accordingly, plaintiff argues that the state court judgment should not preclude his civil rights claims for lost wages.

■ While plaintiff's argument raises a potentially thorny issue of state law regarding whether a jurisdictional bar exists to seeking back pay under § 1983 in a state court of common law jurisdiction, the Court cannot agree that that question is dispositive here. Even if such a jurisdictional bar existed, the Court predicts that Delaware's highest court would nevertheless bar a second suit in equity arising from a common transaction when the particular form of relief sought by plaintiff was available on a slightly different theory of recovery in the Superior Court. Plaintiff's argument for a contrary proposition ignores the fundamental policy behind judicial doctrines of claim preclusion and the policy underlying the exception to the transactional view of claim preclusion on which plaintiff seeks to rely.

Each policy figures prominently in Delaware case law.

■ In an early discussion of claim preclusion, Judge Rodney traced the foundation of that policy to society's overriding interest in bringing legal controversies to an end. *Coca Cola Co. v. Pepsi-Cola Co.*, 36 Del. 124, 172 A. 260, 262–63 (1934). This principle must be tempered by considerations of fairness and should receive cautious adherence to avoid arbitrary results. *Id.* Courts, through judicial rules of finality, however, must ultimately vindicate the interest of society in setting a controversy to rest, and protect involuntary litigants from vexatious suits once all parties have been given a fair opportunity to litigate a controversy. *See id.; Epstein v. Chatham Park, Inc.*, 52 Del. 56, 153 A.2d 180, 183 (Del.Super.1959) (Justice Wolcott, sitting by designation); *see also* 18 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4403 (1981).

■ In this particular case, plaintiff relies on an exception to the transactional view of claim preclusion. In applying this exception, Delaware courts have underscored the crucial importance of a litigant's opportunity to obtain a determination on the merits of his underlying claim. *See Hugh v. Trans-World Airlines*, 336 A.2d 572 (Del.1975) (improper to deny plaintiff an opportunity to present claims when claims before another court were disposed of on grounds unrelated to the merits) *cert. denied*, 423 U.S. 841, 96 S.Ct. 72, 46 L.Ed.2d 61 (1975); *Maldonado v. Flynn*, 417 A.2d 378, 383 (Del.Ch.1980) (the rule against claim splitting should not operate "*entirely* [to] *deny a plaintiff an opportunity* to present his facts and theory of recovery.") (emphasis added). Here, plaintiff has had a substantial opportunity to litigate the merits of this controversy and to seek the relief he claims he is entitled to recover. To permit him to resurrect his claim for lost wages on the basis of an

---

**14.** *See also* Letter dated September 28, 1984 from defendant Town of Blades (attached copy of transcript of complete jury charge).

anomaly in the characterization of relief between state and federal courts, rather than on considerations of fairness, would be inconsistent with the policies underlying Delaware's doctrine of claim preclusion. Accordingly, as to defendant Town of Blades, plaintiff will not be permitted to pursue his claims for relief with the exception of his prayer for reinstatement.

Defendant Town of Blades argues that claim preclusion also bars the present action against the individual defendants because they could have been joined in the prior state court proceedings.[15] D.I. 29:13. As with any argument in federal court relying on the preclusive effect of a state court judgment, the argument's validity must be assessed in light of state law. *See Kutzik v. Young,* 730 F.2d 149, 152 (4th Cir.1984) (applying Maryland law to determine whether a plaintiff's action under § 1983 could be maintained against a group of nominally different parties to an action that plaintiff had previously concluded in state court). Defendants' argument represents a fundamental misunderstanding of the difference in the scope of claim preclusion under Delaware law with respect to parties on the one hand and to claims on the other. The scope of claim preclusion with respect to parties is governed by privity. *Foltz v. Pullman, Inc.,* 319 A.2d 38, 41 (Del.Super.1974) (Christie, J.). In the present action, plaintiff sued the individual defendants in their official and individual capacities.

The individual defendants, in their official capacity, are entitled to the same protection afforded to the Town of Blades against relitigation of claims barred by the prior state court judgment because of the existence of privity between the individual defendants acting in their official capacity and the governmental entity on whose behalf they act. *See New Castle County v. Sterling Properties, Inc.,* 379 A.2d 1125,

1127–28 (Del.1977) (holding that prior mandamus action by members of County Council barred County from maintaining subsequent action against same party on the same issue) (*quoting* with approval *Restatement (Second) of Judgments* § 85 (tent.draft 1975) which was recodified and modified in the Restatement's final version adopted in 1980 as § 36); *cf. Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 402–03, 60 S.Ct. 907, 916–17, 84 L.Ed. 1263 (1940) (explaining privity under federal law of claim preclusion).

Although plaintiff's action is substantially barred against the individual defendants in their official capacity, the individual defendants in their individual capacity are not entitled to the benefits of claim preclusion. *Restatement (Second) of Judgments* § 36(2) (1980); *cf. New Castle County v. Sterling Properties, Inc.,* 379 A.2d 1125, 1128 (Del.1977) (although County itself was barred by claim preclusion from bringing suit against developer, the bar did not extend to private citizens who sought to vindicate their private interests in a suit against the developer). The privity required to invoke claim preclusion against nominally different parties is generally lacking between the representative and individual capacities of the same individual defendant. The result obtained here is consistent with the outcome obtained by other federal courts in § 1983 actions applying the law of other state jurisdictions. *See Beard v. O'Neal,* 728 F.2d 894, 897 (7th Cir.), *cert. denied* — U.S. ——, 105 S.Ct. 104, 83 L.Ed.2d 48 (1984); *Roy v. City of Augusta, Maine,* 712 F.2d 1517, 1522 (1st Cir.1983); *cf. Aitchison v. Raffiani,* 708 F.2d 96, 100 (3d Cir.1983) (liability against municipality is not precluded because defendants were found immune in their individual capacities); *Laskaris v. Thornburgh,* 661 F.2d 23, 26 (3d Cir.1981) (eleventh amendment does not bar an action for

---

**15.** The Court entertains some doubt whether defendant Town of Blades even has standing to raise this argument on behalf of the individual defendants. However, because resolution of the Court's doubts with respect to Blades' standing to raise this argument turns on the substantive merits of the defendants' argument, namely, whether privity exists, the Court will address the defendants' argument on its merits.

damages against an official sued in his individual capacity).

### 2. Municipal Immunity Under § 1983

In *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that a municipality was a person within the meaning of § 1983 and it could be held liable for violations of constitutional rights when the violation is a result "of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.* 436 U.S. at 694, 98 S.Ct. at 2037–38. The Town of Blades claims, nevertheless, that it is absolutely immune from liability for any alleged deprivation of plaintiff's constitutionally protected interests because the acts of which plaintiff complains do not fall within the scope of conduct giving rise to liability under *Monell*. In addition, Blades contends that as a matter of state law, they are immune from liability. Both of these contentions are completely lacking in merit.

■ Plaintiff was discharged by a unanimous vote of the Town Council on May 12, 1980 during an executive session that was convened after a regularly scheduled Town Council meeting for the sole purpose of considering Meding's continued employment with the Town. When public officials, performing in a duly authorized capacity, take official action sanctioned by the municipality, there can be no question that the *Monell* standard has been satisfied.[16] *See Owen v. City of Independence*, 445 U.S. 622, 633–34 n. 13, 100 S.Ct. 1398, 1406, n. 13, 63 L.Ed.2d 673 (1980) (affirming Court of Appeals holding that municipality could be held liable for allegedly depriving plaintiff of a liberty interest without due process of law, after City Council's measure approved the release of an investigative report regarding the plaintiff); *Robb v. City of Philadelphia*, 733 F.2d 286, 291 (3d Cir.1984) (holding City

was liable for its employment-related decisions under § 1983); *Czurlanis v. Albanese*, 721 F.2d 98, 108 (3d Cir.1983) (finding County liable under § 1983 for conduct of County Board in suspending an employee).

■ Blades' argument that it is entitled to immunity under state law is deserving of only a brief comment. A state lacks authority to confer on a municipality immunity from liability under § 1983. *Martinez v. California*, 444 U.S. 277, 284 n. 8, 100 S.Ct. 553, 558 n. 8, 62 L.Ed.2d 481 (1980). Indeed, such an argument would threaten to turn the original purpose for enacting § 1983 (originally enacted as the Civil Rights Act of 1871 § 1, 17 Stat. 13) on its head. The statute was enacted following passage of the Civil War Amendments to the Federal Constitution, with the aim of protecting the constitutional rights of all American citizens against encroachment by the states, and in particular the Southern States which had rebelled against the federal government over the issue of slavery.

■ In the absence of express directions from Congress, the Court has construed § 1983 consistently as prohibiting immunity unless the basis for immunity "was well-established at common law at the time § 1983 was enacted, and where its rationale was compatible with the purposes of the Civil Rights Act." *Owen v. City of Independence*, 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980). Recent state statutes such as 10 *Del.C.* § 4011 simply do not satisfy the requirements for asserting an immunity claim.

### 3. Plaintiff's Failure To Comply With The Notice Requirements Contained In The Town of Blades' Charter.

■ Section 36 of the Charter for the Town of Blades provides that any suit for damages against the Town must serve notice on the Mayor within ninety days from the date of the injury giving rise to the

---

**16.** The municipality could not be held liable for the allegedly false reports appearing in the newspaper without a showing that the story was leaked to the newspaper as part of an official act of some individual connected with the Town Council.

plaintiff's cause of action. 58 *Laws of Delaware*, Part 1, Ch. 34, § 36 (1971).[17] (An Act to Reincorporate the Town of Blades). There is no dispute that plaintiff did not notify the Mayor in accordance with the time limitations provided in the Town Charter. Defendant Town of Blades contends that plaintiff's failure to comply with this provision bars his federal cause of action under § 1983.[18]

■ Section 36 is clearly inapplicable to the outstanding claim against the Town of Blades, since the claim is only one for reinstatement. Even if the notice provision were a statute of limitations, it is unclear whether it would apply to § 1983 actions. Although courts must look to the state law of limitations governing analogous causes of action when, as in the case of § 1983, Congress has not provided an applicable statute of limitations, *Board of Regents of the University of the State of New York v. Tomanio*, 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980), the "borrowing" of state statutes of limitations is not permitted when a particular state limitation period is inconsistent with overriding federal policies. *See Occidental Life Insurance Co. v. E.E.O.C.*, 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977). For purposes of § 1983, all claims should be characterized as actions to recover damages for personal injuries. *Wilson v. Garcia*, — U.S. —, — – —, 105 S.Ct. 1938, — – —, 85

L.Ed.2d 254 (1985). The Supreme Court's decision rejected the use of state statutes of limitations providing remedies for wrongs committed by state officials as an analogous state limitations period for purposes of § 1983. *Id.* — U.S. at —, 105 S.Ct. at —.

■ Section 36, however, is not a statute of limitations, but rather merely a notice provision. As such, and regardless of the Delaware state legislature's intent, it applies exclusively to state causes of action. There is no basis under federal law to require a plaintiff seeking to maintain a claim under § 1983 to adhere to notice provisions as provided under state law. *Cf. Patsy v. Board of Regents of the State of Florida*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) (rejecting exhaustion of state remedies as a prerequisite to maintaining an action under § 1983).

### 4. Due Process Claims

Section 1983 makes deprivations of constitutionally protected interests under color of state authority actionable for damages and equitable relief. Plaintiff alleges that he was deprived of protected interests in property and liberty without notice or a hearing, and thus, in violation of the Due Process Clause of the Fourteenth Amendment. The alleged deprivations resulted from his discharge as an employee from a job in which he claims a property interest, and from public disclosure of the reasons

---

17. Section 36 provides:

No action, suit or proceeding shall be brought or maintained against The Town of Blades for damages, either compensatory, or punitive, on account of any physical injury or injuries, death or injury of property by reason of the negligence, simple, gross, wilful, or wanton of the said The Town of Blades or any of its departments, officers, agents or employees thereof, unless the person by or on behalf of whom such claim or demand is asserted, within Ninety (90) days from the happening of such injury or the suffering of such damage, shall notify in writing the Mayor of The Town of Blades of the time, place, cause, character and extent of the injury sustained, so enrolled or damages suffered.

18. Defendant Town of Blades also appeared to suggest that the plaintiff's action exceeded the applicable statute of limitations. Generally 10 *Del.C.* § 8106 has been applied to actions involving wrongful termination. *See, e.g., Heritage v. Board of Education*, 447 F.Supp. 1240 (D.Del. 1978). Thus, Meding's § 1983 claim for deprivation of a property interest in employment would appear to fall under a three year statute of limitations. Injury to reputation, however, comes within Delaware's two year statute of limitations. *See Avallone v. Wilmington Medical Center, Inc.*, 553 F.Supp. 931 (D.Del.1978). Even if a two year period did apply to plaintiff's entire action, his present action would not be time barred. Plaintiff's cause of action accrued on May 12, 1980 and his present suit was filed on April 2, 1982.

for the discharge which he contends are false and violated his liberty interest in reputation. Defendant Town of Blades contends that no constitutionally protected interests of the plaintiff were affected by its actions, and therefore, plaintiff was not due any process. The individual defendants challenge solely plaintiff's allegation of a deprivation of liberty. Thus, before considering what constitutes due process of law, the Court must examine whether the defendants' actions deprived plaintiff of constitutionally protected interests.

### A. Meding's Property Interest

Any discussion of a constitutionally protected property interest must begin with the Supreme Court's explication of the concept in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In holding that a teacher at a state university who had been terminated, lacked any property rights in his particular job because of his nontenured status, the Court explained:

> To have a property interest in a benefit, a person clearly must have more.... than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. ....

> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that supports claims of entitlement to those benefits.

*Id.*, 408 U.S. at 577, 92 S.Ct. at 2701.

"A property interest in employment can ... be created by ordinance or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law." *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct.

2074, 2077, 48 L.Ed.2d 684; *accord Abraham v. Pekarski*, 537 F.Supp. 858, 866–71 (E.D.Pa.1982) (Becker, J. sitting by designation), *aff'd.*, 728 F.2d 167 (3d Cir.1984), *cert. denied* —— U.S. ——, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1984).

Defendant Town of Blades relies on § 22(a) of the Town's Charter to argue that plaintiff had no property right under state law to continued employment on the Town's Police Force.[19] According to the defendant, because the Town Council possessed the legislative power to remove the plaintiff at any time, his status was that of an at-will employee.

Plaintiff contests the applicability of § 22(a) for purposes of resolving whether he had a property interest in continued employment. Instead, he argues the question is controlled by an ordinance, An Ordinance Establishing A Personnel System for the Town of Blades, Delaware ("Personnel Ordinance"), adopted by the Town subsequent to the legislature's approval of the Town's Charter. The Personnel Ordinance is a comprehensive document that was promulgated for the purpose of establishing a uniform personnel system. D.I. 19A:4–29. The Ordinance classified all employees into three categories: excluded service, unclassified service and the classified service. *Id.* at 5. All those employees who do not fall within the express terms of the former two categories were automatically included in the latter category. *Id.* Meding, as a member of the police force, clearly fell within the classified service.

The protection afforded to members of the classified service was significant and encompassed the rights and privileges set forth in the remaining provisions of the Ordinance unless, by express exception or implication, protection was limited. *Id.* at 5 (Art. II sec. 6). The effect of the Ordi-

---

19. Section 22(a) provides:

It shall be the duty of the Town Council to appoint a Police Force, consisting of a Chief of Police and such members or subordinates as the Town Council may deem wise. The Town Council shall, from time to time, make rules and regulations as may be necessary for the organization, government, and control of the Police Force. *The Chief of Police and the members of the Police Force shall be subject to the direction of The Town Council and may be removed by the Town Council at any time.* 58 *Laws of Delaware*, Part 1, Ch. 34 (1971) (emphasis added).

nance was to give employees with more than six months service to the Town "permanent status." *Id.* at 7 (Art. IV sec. 1).

The declared policy of the Town, as expressed in the Personnel Ordinance, was to make employment of tenured employees subject only to "good behavior, satisfactory work performance, and availability of funds." *Id.* at 4 (Art. 1 sec. 2(d)). This policy toward tenured employees was implemented in part by Article VI which discussed the types of disciplinary action and causes for such action. *Id.* at 10–12 (Art. VI). Significantly, disciplinary proceedings in the police force were explicitly singled out to emphasize that such proceedings should be disposed of in a manner consistent with the disciplinary procedures set out in Article VI. *Id.* at 10 (Art. VI sec. 2). The list of causes for which disciplinary action could be taken was not meant to be exhaustive. *Id.* at 11–12 (Art. VI sec. 5). Nevertheless, the list makes clear that disciplinary action could only be taken for cause.

■ Viewing facts in a light most favorable to defendants, the Court finds that Personnel Ordinance conferred on Meding a property interest in continued employment. First, the Personnel Ordinance is sufficient in and of itself to convey a property interest.[20] The Town's Charter empowering the Town to remove police officers "at any time" did not restrict the Town's power to confer a property interest in employment. Nor is there any inconsist-

ency *per se* between the Charter's enumeration of powers and the Town's adoption of the Personnel Ordinance. The Charter provision does not dictate the legal status enjoyed by the Town's employees; rather, it merely authorizes the Town to remove officials under state law from the performance of their official duties. The Town remained free to grant employees an expectation interest in continued employment. *Cf. Perri v. Aytch,* 724 F.2d 362, 364–66 (3d Cir.1983) (Court's personnel rules were controlling as to question of discharged probationary employee property interests where legislature had authorized adoption of personnel rules by state courts). By raising the threshold for termination of classified employees to one for cause only, the Town transformed what were formerly at-will employees, into employees with rights tantamount to property interests. *Cf. Haney v. Laub,* 312 A.2d 330 (Del.Super.1973) (recognizing that employer's right to terminate employee is restricted with respect to employees who enjoy something more than an at-will employment status).

### B. *Meding's Liberty Interest.*

In addition to the deprivation of his property interest in continued employment, the plaintiff alleges that the defendants deprived him of a liberty interest through public dissemination of the Town Council's stated basis for its termination of the plaintiff. A newspaper article in the May 14, 1980 edition of the Seaford Leader[21] is the

**20.** *Heideck v. Kent General Hospital,* 446 A.2d 1095 (Del.1982) is not to the contrary. In *Heideck,* the Delaware Supreme Court held that a booklet issued by an employer did not change the employee's at-will employment status. *Heideck* is distinguishable from the case at bar in that a booklet does not carry the legal force of a town ordinance. Moreover, the Delaware Supreme Court conceded that under some conditions a booklet might change an employee's status, but the facts did not support such a finding in the particular case. Here, there can be no doubt that the purpose of the Personnel Ordinance was to change the employment status of employees with greater than six months of service to the Town.

**21.** The relevant portion of the article reads:
CHIEF'S RESIGNATION ACCEPTED

BLADES—Following a 50-minute executive session Monday night, the Blades Town Council accepted the resignation of Blades Police Chief Richard D. Meding.

Blades Town Clerk George P. Wroten, Jr. announced the council's decision to accept the resignation.

Wroten said council members were based their decision on Section 6, Article 16 of the town personnel policy.

The article states that unexplained absences of three days or more will be deemed a resignation by a town employee.

MEDING HAD submitted a letter of resignation on April 11, but council members delayed accepting it until after they consulted the town attorney.

sole source of the material that allegedly deprived Meding of a liberty interest in reputation. Meding claims that the article repeats a false charge, namely, that he, Meding, had been absent from duty for unexplained reasons for more than three days.

Defendants challenge this claim on several grounds. Defendant Blades contends that Meding's allegations constitute nothing more than a common law action for defamation in the belief that a claim cognizable for defamation cannot also form the basis of an action sounding in constitutional tort. The Supreme Court has rejected the defendants' argument repeatedly, recognizing that good name and reputation are fundamental attributes of the ordered concept of liberty. *See Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971); *Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972).

The Court, however, is dubious whether the allegation of an "unexplained absence" is sufficiently stigmatizing to implicate plaintiff's liberty interest. The Court's own interpretation of the article does not suggest that plaintiff has been forced to bear a "badge of infamy" or even that plaintiff has been branded by the State in a degrading manner. *See Wisconsin v. Constantineau*, 400 U.S. at 437, 91 S.Ct. at 510. Whether the charge of "unexcused absences" by a police chief is sufficiently stigmatizing to implicate liberty interests, however, is ultimately a question of fact that the Court is unable to resolve when viewing the facts in a light most favorable to the plaintiff. *See McKnight v. Southeastern Transportation Authority*, 583 F.2d 1229, 1236 (3d Cir.1978).

"Stigma to reputation alone, absent some accompanying deprivation of present or future employment, is not a liberty interest protected by the fourteenth amendment." *Robb v. City of Philadelphia*, 733 F.2d 286, 294 (3d Cir.1984); *accord Paul v. Davis*, 424 U.S. 693, 701–06, 96 S.Ct. 1155, 1160–63, 47 L.Ed.2d 405 (1976). The Town's decision to terminate the plaintiff does not satisfy the requirement that he show the alleged stigmatization affected his employment opportunities, since the source of the alleged stigmatization was the Town's explanation for its decision to discharge the plaintiff. *See Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth*, 408 U.S. 564, 575, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972). Because public dissemination of the charge did not actually result in his discharge, plaintiff is required to show that the public disclosure of the accusation affected his future employment opportunities.

■■■ There is substantial evidence in the record refuting plaintiff's allegation that his employment opportunities were affected by the charge that he was absent without excuse. Although plaintiff claims to have applied without success to over fifty police departments in and around Delaware, Meding was told by a knowledgeable Sussex County official the reason that he did not receive a job was that he "had filed suit against a municipality." D.I. 34:1 (Deposition of Richard Meding). This was subsequently confirmed by a friend of Meding, Charles Vickers, a State Police employee, who contacted nine different people regarding employment for his friend. In each instance, Vickers was told that plaintiff would not be hired because of the pending state court action. D.I. 19A:32 (Deposition of Richard Meding).[22] Plaintiff was

---

Meding had asked for severance pay and other considerations that council members weren't certain he was entitled to. D.I. 31A:12.

**22.** Plaintiff did not raise any evidentiary objections to the incorporation of Meding's statements regarding conversations he had with other parties into the record. In any event, the reported conversations qualify as admission by

a party opponent, and thus would not constitute hearsay. Fed.R.Evid. 801(d)(2).

The Court need not address the legality of denying employment to a party because the party has filed lawsuits against another municipality. The Court is solely concerned with the claims against the defendants raised in the Complaint.

subsequently hired by the Berlin, Maryland Police Department. D.I. 31A:10–11. Meding left that job voluntarily after deciding not to move to Maryland. *Id.* Following his termination from the Blades' police force, Meding did obtain work from private employers such as a gunshop, Guns and Goodies, the Lackawana Detective Agency, and an automobile dealership.[23] *See* D.I. 34:2–3; D.I. 19A:56.

■■■■■ A moving party is entitled to summary judgment if the undisputed evidence shows that there are no genuine issues as to material facts and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). If the moving party carries its initial burden of demonstrating the absence of any genuine issue of material fact, then the burden shifts to the non-moving party to produce evidence in support of specific facts showing there is a genuine issue for trial. Fed.R.Civ.P. 55(e); *see Spirides v. Reinhardt,* 613 F.2d 826, 833 & n. 32 (D.C.Cir.1979). Defendants have adduced a substantial amount of evidence indicating that plaintiff's unexcused absence was not the cause of plaintiff's subsequent difficulties in obtaining employment. Accordingly, the burden shifted to plaintiff to produce some evidence from which it was possible to infer that his failure to get a job was attributable to the Town Council's accusation that he was absent without a satisfactory reason.[24] Plaintiff has not carried his burden of showing that issues of genuine fact exist. Accordingly, his claim that the statements contained in the newspaper article of May 14, 1980 deprived him of a liberty interest within the scope of the Fourteenth Amendment must fail.

## C. Due Process Requirements

■■■■ The Due Process Clause of the Fourteenth Amendment requires the state or those clothed in state authority, such as a municipality, to provide an individual with an opportunity for a hearing, absent extenuating circumstances, before depriving him of any significant property interest. *See Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971); *Bell v. Burson,* 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90 (1971). Although "the formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings," *Boddie v. Connecticut,* 401 U.S. at 378, 91 S.Ct. at 786, the opportunity to be heard "must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). The right to a hearing invariably entitles the individual to notice. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed.2d 865 (1950).

■■■ These principles collectively "require 'some kind of a hearing' prior to the discharge of an employee who had a constitutionally protected property interest in his employment." *Cleveland Board of Education v. Loudermill,* —— U.S. ——, ——, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). The required hearing need not be elaborate when subsequent post-termina-

**23.** The exact reasons for Meding's departure from his job at Guns and Goodies are unclear. The Complaint alleges that Meding's new employer, Robert Smith, was contacted by some of the individual defendants urging Smith to fire the plaintiff. Complaint ¶ 18 (D.I. 1); D.I. 31A:11 (Affidavit of Richard Meding). However, both Meding and his former employer indicated that Meding left voluntarily. D.I. 19A:39 (Deposition of Richard Meding); D.I. 30:64–66 (Affidavit of Robert Smith). Whatever the exact cause of Meding's departure, plaintiff's attorney at oral argument disavowed any separate cause of action based on the incidents surrounding Meding's employment with Guns and Goodies.

**24.** The Court is mindful of the potential burden plaintiff faces in producing evidence to show "why" he was not hired. The Court, however, does not demand direct proof. Plaintiff could have offered indirect evidence. Of course, such indirect proof would be subject to rebuttal by direct evidence of the reason for not hiring a particular individual. Merely applying for a job that may or may not exist is not sufficient to show a genuine issue of fact once a defendant has adduced uncontested evidence that plaintiff was not hired for other reasons.

tion proceedings are contemplated. *Id.* —— U.S. at ——, 105 S.Ct. at 1494.

At a minimum, however, due process requires that, prior to discharge, a tenured public employee be given "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present reasons, either in person or in writing, why proposed action should not be taken." *Id.*

■ Given that Meding had a property interest in his job with the Town of Blades, he could not be terminated without the Town affording him due process. The Town failed to meet its constitutional obligations. Meding was given neither a pre-termination nor a post-termination hearing. He never received notice that the Town Council would take up the matter of his resignation at their regularly scheduled meeting of May 12, 1980. More importantly, the defendants failed to provide Meding with notice that he stood accused of an unexplained absence in excess of three days. The failure to give Meding notice in this regard was particularly significant in that Meding had supplied the Town with a medical excuse for taking a two week leave of absence in mid-April. If given an opportunity to respond with notice to the Town's accusation, he may have been able to offer additional medical evidence explaining his absence.

■ The Town raises three different defenses to excuse its failure to accord Meding the requisite notice and hearing to which he was entitled. First, the Town claims that Meding really was not terminated but that he resigned. Although Meding attempted to resign, the Town did not accept his submitted resignation. Instead, the Town chose to treat his alleged unexcused absences as an implicit resignation. A public employer cannot circumvent its constitutional obligations by recharacterizing an employee's termination as a resignation. By formally rejecting Meding's proffered resignation, and severing his employment relation with the Town on terms to which plaintiff never gave his consent, the Town Council unequivocally terminated Meding's employment.

■ The Town further contends that Meding's actions in turning in his gear signified a definite intent to resign and the Town Council could not do anything but consent. This argument ignores the fact that the Town actually went through the formality of rejecting his resignation. Nor can the Town complain that it would face intolerable uncertainty whenever an employee wished to resign. On the contrary, when a public employer refuses to accept an employee's resignation and nevertheless wishes to discharge that employee, it can resolve all uncertainty by going through the formality of providing the employee with adequate notice of discharge and setting a time for a hearing. If the discharged employee fails to take advantage of a constitutionally sufficient procedure afforded to him, then he cannot claim subsequently that he was deprived of due process.

■ Alternatively, the Town claims its conduct at all times conformed to the Personnel Ordinance. According to defendant Blades, Meding was not entitled to the disciplinary procedures provided under Article VI because he was not terminated for disciplinary reasons, but rather for unexplained absences under Article XVI sec. 6. Regardless of the procedure Meding was entitled to under the Personnel Ordinance and regardless of what procedures are provided in the Personnel Ordinance for disciplinary actions, Meding was constitutionally entitled to certain minimum procedures which have already been described. *See Cleveland Board of Education v. Loudermill,* —— U.S. at ——, 105 S.Ct. at 1492 (property interest conferred by State cannot be limited by the procedures specified by the State for its deprivation); *Vitek v. Jones,* 445 U.S. 480, 491, 100 S.Ct. 1254, 1263, 63 L.Ed.2d 552 (1980) (minimum procedural requirements are a matter of federal law which the state is required to satisfy regardless of what procedures the state believes are adequate). The significance of the Personnel Ordi-

nance under the Due Process Clause is limited to its creation of a property interest rather than the procedures it provides for depriving someone of the property interest created.

 Finally, the Town points to the special nature of a policeman's duties which may require the Town to take emergency action in suspending such employees.[25] While the Town has properly set forth a recognized exception to the requirement of pre-termination hearing and notice, the Town neglects to realize the special responsibilities it faces in such extraordinary situations. When circumstances demand immediate suspension of an employee, the employee's right to a speedy post-termination hearing is that much greater. *Barry v. Barchi*, 443 U.S. 55, 66, 99 S.Ct. 2642, 2650, 61 L.Ed.2d 365 (1979). The Town failed to provide either a pre-termination or a post-termination hearing. The latter omission cannot be excused by any alleged emergency requiring immediate suspension.

 In addition, when special circumstances justify immediate suspension, the public employer should act in a manner that minimizes the extent of his departure from the constitutional norm. Thus, although some justification may exist for immediately suspending an employee, the

Town Council's immediate suspension of Meding and his salary without some form of pre-termination process is less tenable.[26] *See Hopkins v. Mayor & Council of Wilmington*, 600 F.Supp. 542, 549 (D.Del. Dec. 26, 1984).[27]

*5. Qualified Immunity*

 The individual defendants have raised an affirmative defense of qualified immunity and claim that they are entitled to judgment as a matter of law. The necessity of extending immunity to public officials stems from a recognition that public officials cannot be expected to discharge their responsibilities without occasional mistakes and that on balance, the risk of occasional mistakes is far outweighed by the cost of public officials who are afraid to act in the public interest. *Scheuer v. Rhodes*, 416 U.S. 232, 241–42, 94 S.Ct. 1683, 1689, 40 L.Ed.2d 90 (1974). For the most part, the immunity enjoyed by public officials is qualified to balance the need to encourage "the vigorious exercise of official authority," against the need "to protect the rights of citizens" against gross abuse of the public trust reposed in governmental officials. *Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S.Ct. 2727, 2733, 73 L.Ed.2d 396 (1982) (*citing Butz v. Economou*, 438 U.S. 478, 504–506, 98 S.Ct. 2894, 2909–10, 57 L.Ed.2d 895 (1978)).[28] In its most recent

---

**25.** To buttress its contention that Meding's continued employment constituted a danger to public safety requiring emergency action, the Town of Blades has gone to considerable lengths in dredging up details regarding the emotional difficulties experienced by Meding requiring psychiatric counseling. *See* D.I. 30:86 (Turnabout Counsel Center letter of 3/16/84), 87 (Delaware State Hospital Documents), 98 (Beebe Hospital Documents). Such an argument obviously raises questions of fact that cannot be resolved on summary judgment. There are, however, certain difficulties with it. First, the Town Council was aware of the fact that Meding had received counseling on and off for a long period prior to his termination. Second, the Town does not point to a specific incident prior to Meding's termination that led it to believe he was dangerous. Finally, the fact that the Town Council was willing to wait almost thirty days after Meding submitted his resignation to take action, undercuts its contention that the necessity for

immediate action precluded any possibility of a pre-termination hearing.

**26.** Requiring the Town to continue paying salary to an employee after he has been suspended but before affording the employee some minimal form of process, does not prevent the Town from seeking restitution if the suspension turns out to be ultimately justified.

**27.** The Town points to a meeting between Meding and the Town Council, held one week after his termination, as evidence that the defendant properly discharged their constitutional obligations. However, it is undisputed that the meeting was held for the purpose of discussing severance pay and accrued benefits. The reason for Meding's termination was not discussed, nor was Meding offered an opportunity to refute the charges against him. *See* D.I. 30:82.

**28.** The Town of Blades has also argued on behalf of the individual defendants that subjecting public officials of Blades to liability in their

decision on the issue of qualified immunity, the Supreme Court expanded the power of trial courts to grant summary judgment in order to give public officials greater protection from having to go to trial to defeat insubstantial allegations.[29] *Id.,* 457 U.S. at 816–818, 102 S.Ct. at 2738. This expansion of trial courts role was achieved by linking the immunity determination to objective factors, namely, whether, in discharging his governmental duties, the public official knew or should have known his legal obligations to the plaintiff. *Id.,* 457 U.S. at 818, 102 S.Ct. at 2739; *accord Czurlanis v. Albanese,* 721 F.2d 98, 108 (3d Cir.1983). Because immunity turns on basically a legal question as to the state of the law at the time of alleged incidents, neither defendants' assertion of good faith, *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975), nor a plaintiff's allegations of malice, *Harlow v. Fitzgerald,* 457 U.S. at 817–18, 102 S.Ct. at 2739, are sufficient to withstand summary judgment.[30]

In view of this Court's earlier determination that plaintiff was, as a matter of law, deprived of his right to due process in connection with his termination, and given that the legal basis for this decision "has been settled for some time now," *Cleve-* *land Board of Education v. Loudermill,* —— U.S. ——, ——, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (*citing Davis v. Scherer,* 468 U.S. ——, —— n. 10, 104 S.Ct. 3012, 3019 n. 10, 82 L.Ed.2d 139 (1984)), the individual defendants are not entitled to judgment on the issue of immunity as a matter of law.[31]

█ If, as in this case, "the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow v. Fitzgerald,* 457 U.S. at 818–819, 102 S.Ct. at 2739. When, however, "the official pleading the defense claims extraordinary circumstances," plaintiff may no longer be entitled to judgment as a matter of law. *Id.* Indeed, questions of extraordinary circumstances are inherently factual, precluding resolution of the issue of qualified immunity on summary judgment. *See Czurlanis v. Albanese,* 721 F.2d 98, 108–109 & n. 8 (3d Cir.1983).

█ The present controversy raises at least two instances of extraordinary circumstances that should be considered by a jury, or at least addressed by this Court after the parties have had an opportunity to brief the issue in greater detail. The first of these instances concerns plaintiff's

individual capacity will potentially discourage local residents from undertaking civic responsibilities. Legislative immunity which provides absolute immunity to legislators acting in an official capacity, also applies to individual members of a municipal council acting in a legislative capacity. *See Aitchison v. Raffiani,* 708 F.2d 96, 99 (3d Cir.1983). This concept of immunity, however, does not extend to the legislative body itself. *Lake County Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 405 n. 29, 99 S.Ct. 1171, 1179, 59 L.Ed.2d 401 (1979). Nor are the actions of the Town Council in terminating Meding, legislative merely because termination was achieved by a vote of the members. The Council, in discharging Meding, was clearly performing a managerial function and thus, its members were not entitled to absolute legislative immunity. *Abraham v. Pekarski,* 728 F.2d 167, 175 (3d Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1984).

**29.** Although *Harlow* was not an action involving state officials under § 1983, the Supreme Court clearly indicated that the qualified immunity standard for a § 1983 action was essentially the same. 457 U.S. at 818 n. 30, 102 S.Ct. at 2738–39 n. 30.

**30.** Although *Harlow* modified the standard regarding qualified immunity articulated in *Wood* by expressly rejecting allegations of malice as a basis for withstanding summary judgment, *Harlow* did not overrule the position advanced in *Wood* that a public official's assertion of good faith does not, itself, automatically create a disputed issue of fact for trial.

**31.** While the incidents giving rise to this lawsuit transpired in 1980, the law was well established at that time that public employers wishing to discharge employees having a property interest in their employment had to give those employees some procedural protections. *See, e.g., Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Barry v. Barchi,* 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979).

submission of his resignation, suggesting his willingness to voluntarily sever his employment relationship with the Town. The Town officials may have mistakenly believed that the submission of the plaintiff's resignation gave them greater latitude in dictating the terms on which Meding's employment could have been severed without affording Meding any additional process. The second unusual feature in this case concerns the type of public officials involved. The Mayor of Blades and the individual members of the Town Council represent an extreme among public officials who perform their function on a part-time basis. The Town Council meets only once a month. Blades, a town of about seven hundred inhabitants, had only three full-time employees at the time of the events giving rise to this lawsuit.

■ Whether the resources available to a public official constitute an extraordinary circumstance within the meaning of *Harlow* is an unsettled question of law. In *Harlow*, the Supreme Court did not explain the kinds of circumstances that might be considered extraordinary. To weigh public resources available to an official in determining whether the public official should have known more about his legal obligations would undoubtedly undercut the objectivity of the *Harlow* standard. At the same time, imposition of a uniform standard for what the reasonable public official should know runs counter to the underlying policy behind qualified immunity, namely, the avoidance of huge penalties on the good faith efforts of local citizens arising from their participation in local government.[32] To some extent, the disparity in sophistication among public officials is minimized when the public official has access to legal counsel. Even this qualification, however, only serves to push the inquiry one step further, i.e., whether a public official is entitled to rely on mistaken legal advice. While the Court is confident that the defendants are not entitled to summary judgment on the issue of qualified immunity, this need not imply that summary judgment should automatically issue for the plaintiff. The task of shaping the issue of qualified immunity for trial is left to the parties.

### 6. Summary Of Issues For Trial

■ The plaintiff was deprived of his property interest in continued employment in violation of the Due Process Clause of the Fourteenth Amendment on the only surviving issue of liability presented in the Complaint. Thus, the issues for trial concern solely matters of relief. Only equitable remedies can be sought against the Town of Blades because of the prior state court action involving these two parties. Even the equitable remedies available to the plaintiff are somewhat limited because he will not be permitted to seek back or front pay. Thus, the availability of reinstatement as a remedy appears to be the sole triable question as between the plaintiff and the defendant Town of Blades. Reinstatement is a remedy which lies in the sound discretion of the trial court and will be considered only if the plaintiff is able to show that he would not have been discharged had he been afforded due process. *Skomorucha v. Wilmington Housing Authority*, 504 F.Supp. 836, 839 (D.Del.1980); *Knotts v. Bewick*, 467 F.Supp. 931, 937 (D.Del.1979).

■ The plaintiff can seek a wider range of remedies against the individual defendants because they were not parties to the previous state court action. Before reaching the issue of relief, however, defendants will have an opportunity to argue to the jury that they are entitled to qualified immunity. If defendants establish that their actions did not stem from wanton conduct with respect to plaintiff's rights or a conscious effort to deny him due process, then plaintiff will be precluded from recovering any monetary damages from the individual defendants. On the other hand, the failure of the individual defendants' affirmative defense would permit plaintiff to seek

---

**32.** Obviously the more severe the infringement of an individual's constitutional rights, the less tolerance courts should extend to the responsible public officials and the more uniform the standard governing immunity among public officials should be.

recovery of nominal damages, *Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 1054, 55 L.Ed.2d 252 (1978), compensatory damages, *Id.* 435 U.S. at 254–55, 98 S.Ct. at 1047–48; *Laskaris v. Thornburgh*, 733 F.2d 260, 264 (3d Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 260, 83 L.Ed.2d 196 (1984), and punitive damages. *Laskaris v. Thornburgh*, 733 F.2d at 264; *Abraham v. Pekarski*, 728 F.2d 167, 171–73 (3d Cir.) (affirming award of punitive damages against the individual defendants), *cert. denied,* —— U.S. ——, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1984).

█ Typically, more specific comments regarding the availability of compensatory damages would be unnecessary because the rules governing recoverable compensatory damages for a due process claim are roughly analogous to common law rules of damages. *Carey v. Piphus*, 435 U.S. at 258, 98 S.Ct. at 1049. Here, however, there is a lurking question of issue preclusion. Since the general verdict in the state court action reflected the damages recoverable for wrongful discharge up until September 9, 1981, the plaintiff is not entitled to relitigate this aspect of the issue of damages against the individual defendants. Because plaintiff neither sought lost wages beyond September 9, 1981, nor was he permitted to seek damages for emotional distress in the prior state court action, issue preclusion will not bar the plaintiff's efforts to recover these compensatory damages from the individual defendants.

In accordance herewith, an order will issue.