John S. and Rochelle D. SHIPLEY, Plaintiffs,

v.

FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF DELAWARE (formerly known as First Federal Savings and Loan Association of New Castle County); Joseph B. Green, Esquire of Green & Green Law Offices; Michael P. Walsh, Sheriff of New Castle County, Delaware; and Margo Ewing Bane, Prothonotary of New Castle County, Delaware, Defendants.

Civ. A. No. 84–521 CMW.

United States District Court, D. Delaware.

Aug. 26, 1985.

John S. and Rochelle D. Shipley, pro se.

Frank J. Miller, of Miller & Foulk, Wilmington, Del., for defendant, First Federal Sav. and Loan Ass'n of Delaware.

John A. Elzufon, of Elzufon & Bailey, Wilmington, Del., for defendant, Joseph G. Green, of Green & Green.

Theodore F. Sandstrom, of Wilmington, Del., for defendant, Michael P. Walsh, Sheriff of New Castle County, Del.

Brian A. Sullivan, Wilmington, Del., for defendant, Margo Ewing Bane, Prothonotary of New Castle County, Del.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

This civil rights action for damages and injunctive relief arises out of efforts by

First Federal Savings & Loan Association ("First Federal") to foreclose a mortgage held on property owned by the plaintiffs, John and Rochelle Shipley. Presently before the Court are separate motions for summary judgment by two of the defendants: the Sheriff of New Castle County, Michael Walsh, and the Prothonotary of New Castle County, Margo Ewing Bane. In addition, the Court has directed the parties to brief for possible summary judgment additional issues regarding the constitutionality of the notice provision which First Federal attempted to use in connection with its foreclosure procedure.

## I. BACKGROUND FACTS

On July 19, 1978, the plaintiffs executed a mortgage, which named First Federal as the mortgagee, in connection with their purchase of property and a house located at 609 Wildel Avenue, Minquadale, New Castle, Delaware. D.I. 98 (Exhibit H).[1] This mortgage was recorded thereafter in the Office for the Recording of Deeds in and for New Castle County, Delaware. A short time later, First Federal instructed its attorney, Joseph B. Green, to initiate foreclosure proceedings against the Shipleys for alleged non-payment on their mortgage. On January 21, 1981, an action was commenced in Superior Court by filing a complaint of scire facias sur mortgage. D.I. 97A (Exhibit 1).[2] Apparently service was unsuccessful in that an alias summons was requested by Green on February 2, 1981. Shortly thereafter, First Federal directed Green to discontinue the foreclosure proceedings. D.I. 97:2.[3] On August 12, 1983, some eighteen months after initiating the foreclosure proceedings, Green notified the Prothonotary of New Castle County to dismiss the action.

Within six months of the dismissal, First Federal had renewed its instructions to Green to bring a foreclosure action which Green filed on February 23, 1983. Once again, First Federal rescinded its instruction within a short time and once again, Green so notified the Prothonotary.

On May 4, 1983, a third foreclosure action on the Shipleys' property was commenced in Superior Court on a complaint of scire facias. It is the events arising out of this action that form the underlying basis of the Shipleys' claims. In connection with this third action, First Federal attempted to accomplish service by having a writ of scire facias sur mortgage served on the Shipleys by the Sheriff.

The Sheriff's affidavit offers the following account of the ensuing events:

5. In this particular case, a copy of the Sci. Fa. Sur Mortgage, writ, summons and complaint was received in my office on May 5, 1983, commanding the Sheriff to summon and serve the defendants, John S. Shipley and Rochelle D. Shipley. The address provided for service was 609 Wildel Avenue, Minquadale, Wilmington, De. On May 9, 10, 11, 18 and 20, 1983, attempts were made by my deputies to serve the Shipleys with a copy of the summons and complaint. These attempts were unsuccessful either because there was no answer or only a minor was at home. No personal service was made. No copy of the summons and complaint was posted upon the property. No copy of the summons and complaint was delivered to either defendant. No copy of the summons and complaint was left at the Shipleys' dwelling house. As a result of the numerous attempts at service, the Sci. Fa. writ was returned to the Prothonotary on May 26, 1983. The return stated: "Non-sunt Inventi to John S. Shipley and Rochelle D. Shipley, his wife, on the 26th day of May, A.D., 1983."

---

1. "D.I." refers to the docket item number of the document followed by the relevant page numbers. D.I. 98 is plaintiffs' "Summary of Facts and Proceedings in the Superior Court and Supreme Court for the State of Delaware in Mortgage Foreclosure Action 83–L–My–7."

2. Defendant Green's "Exhibits of Letter (dated May 24, 1985) to Judge."

3. Letter from Joseph B. Green (dated May 24, 1985).

6. Subsequently, my office received in this particular case, an alias Sci. Fa. Sur Mortgage writ on June 6, 1983, for service of the summons and complaint upon the defendants at 609 Wildel Avenue, Minquadale, Wilmington, Delaware. On June 8, 13, 14, 16, and 17, attempts at service were made upon Mr. and Mrs. Shipley. The at service were unsuccessful. On one occasion, there was no answer. On two other occasions, only minor children were at home. No personal service was made upon the defendants. No copy of the summons and mortgage complaint was delivered or read to the defendants personally. No copy thereof was left at the Shipleys' dwelling house. On June 28, 1983, as a result of the unsuccessful attempts at service the alias Sci. Fa. writ was returned to the Prothonotary. The return stated: "Nonsunt Inventi to John S. Shipley and Rochelle D. Shipley, his wife, on the 26th day of June, A.D., 1983."

7. On July 3, 1983, First Federal by praecipe, requested the issuance of an execution writ Levari Facias, for sale of the Shipleys' property by the Sheriff. Said writ, which was signed by the Prothonotary and witnessed by the Honorable Albert J. Stiftel, was received by the Sheriff on July 8, 1983. Pursuant to said writ, the real property of the Shipleys at 609 Wildel Avenue, Minquadale, New Castle, Delaware, was advertised in the News Journal and New Castle Eagle papers for sale on September 13, 1983. The sale was stayed and the Lev. Fac. writ was returned on September 19, 1983, to the Prothonotary.

8. On September 21, 1983, an alias Lev. Fac. writ was issued by the Prothonotary commanding the sale of the real property of Mr. and Mrs. Shipley in execution. Again the sale was advertised as before. The sale was stayed and the writ was returned to the Prothonotary on November 16, 1983.

9. On January 18, 1984, a First Pluries Lev. Fac. writ was issued by the Prothonotary for sale of the real property of Mr. and Mrs. Shipley. Again the sale was advertised in the newspapers as before. The sale was stayed and the writ was returned to the Prothonotary on March 1, 1984.

D.I. 68:A-2-A-7 (Affidavit of Michael P. Walsh).[4]

The basic averments set forth in the Sheriff's affidavit are not disputed in plaintiffs' complaint. Plaintiffs allege that "service of process was attempted by Defendant, [sic] Walsh, his servants, agents, employees, or deputies" pursuant to Delaware Superior Court Civil Rule 4(f)(4) (hereinafter "Rule 4(f)(4)").[5] D.I. 1:¶ 6. This rule provides that "in actions begun by scire facias, 2 returns without service of 2 consecutive writs shall constitute legal and sufficient service." This provision for constructive service became the basis on which the default judgment was entered in the scire facias proceeding by the Prothonotary pursuant to Delaware Superior Court Rule 55(b)(1) after receiving a request for entry of judgment from First Federal's attorney. D.I. 67:A-11.[6] Plaintiffs maintain that they "were never served a summons nor were they ever notified of the existence of the mortgage foreclosure action." Id.

The Sheriff caused a circular to be posted in the Shipleys' yard in anticipation of the first sale that was scheduled for September, 1983 and this is how the Shipleys first learned that a default judgment had been entered.[7] D.I. 1:¶ 6. The circular is

---

**4.** Defendant Walsh's Opening Brief in Support of His Motion For Summary Judgment.

**5.** Plaintiffs later maintained "Plaintiffs do not agree that service was attempted as plaintiffs have no way of knowing." D.I. 125:1 (Letter from Shipleys dated June 26, 1985). In view of the fact that the Shipleys have no evidence to the contrary, the Sheriff's affidavit must be taken as true.

**6.** Defendant Margo Ewing Bane's Opening Brief in Support of Her Motion for Summary Judgment.

**7.** A copy of the circular appears as Appendix A to this Opinion. See D.I. 98 (Exhibit A). [Ed. note: Appendix omitted for purposes of publication.]

captioned in bold large typeface—"SHER-IFF'S SALE". It goes on to describe the Shipleys' property. The bottom of the circular contains the following bold faced print: "SEIZED AND TAKEN IN EXECUTION AS THE PROPERTY OF JOHN S. SHIPLEY AND ROCHELLE D. SHIPLEY, HIS WIFE, AND TO BE SOLD BY MICHAEL P. WALSH, SHERIFF." A notable feature of the circular is the absence of any notice to the homeowners, in this case the Shipleys, of the availability of any legal process to set aside the impending real estate transaction.

On January 24, 1984, the Shipleys filed in Delaware Superior Court a document captioned, "Petition for Relief from Judgment, or to Strike Judgment, or Declaratory Relief Stating that Judgment Was Never Entered, or to Stay Sheriff's Sale." D.I. 97:A (Exhibit 7). The purpose of the Petition was to set aside the default judgment that had been entered in early July of 1983, and to stay any further threatened sale of their property. The Petition was opposed by First Federal. A hearing was held before Superior Court Judge Bifferato and shortly thereafter, the Shipleys lodged a complaint against him in the Court of the Judiciary (a judicial disciplinary body in the State of Delaware), leading Judge Bifferato to recuse himself from the matter before him. D.I. 97:A (Exhibit 10).

The case was assigned to Judge Martin who on March 17, 1984 vacated and voided the default against the Shipleys, after he determined that the default judgment entered against them had been entered prematurely. D.I. 97:A (Exhibit 11). Judge Martin held that constructive service pursuant to Rule 4(f)(4) on the Shipleys was not achieved until June 28, 1983, and thus, the Shipleys should have been given twenty days after this date to respond before a

default judgment was entered. This favorable decision for the Shipleys was appealed by them to the Delaware Supreme Court and that appeal was subsequently dismissed.

On April 17, 1984, First Federal, through its attorney Green, renewed its motion for a default judgment. D.I. 97:A (Exhibit 12). Service was by mail. Plaintiffs did not respond on the motion's return date and accordingly, First Federal's Motion for a Default Judgment was granted on May 4, 1984. D.I. 97:A (Exhibit 13).

The Shipleys sought to appeal the Superior Court's entry of judgment and moved for a stay of the state court proceedings before the Delaware Supreme Court. This appeal was dismissed as moot. On June 22, the Shipleys moved in Superior Court to vacate the default judgment and on June 26, 1984, First Federal agreed to vacate the default judgment, giving the Shipleys twenty days to answer First Federal's complaint. D.I. 97:A (Exhibit 16). An answer was duly filed. In ¶ 6 of their answer, the Shipleys allege: "Service of Process by the Plaintiff is contrary to law and the due process requirements of the United States Constitution." D.I. 97:A (Exhibit 17). According to the parties, the state court proceedings are presently inactive, but they have not been formally stayed.

## II. ISSUES PRESENTED

Defendant Bane and Walsh have separately moved for summary judgment.[8] Both argue that plaintiffs' complaint fails to state a cause of action against either of them, and to the extent that it does state a valid cause of action, plaintiffs should be barred by the doctrines of absolute and qualified immunity from recovering damages from them.

---

**8.** Pursuant to Rule 56(c), a moving party is entitled to summary judgment if there is no genuine issue of material fact with respect to the issues on which the party seeks judgment, and the moving party is entitled to judgment as a matter of law. The moving party bears the burden of initially demonstrating the absence of any genuine issue of material fact for trial. *See*

*Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). However, once the moving party has satisfied this burden, then, to withstand summary judgment, the non-moving party must actually come forward with evidence supporting his own allegations. Fed.R.Civ.P. 56(e).

There are two senses in which a claim might be said to fail to state a cause of action. One is that the complaint may lack the requisite degree of specificity in its factual allegations. For instance, conclusory assertions that defendant deprived plaintiff of his rights, without more, would not meet the pleading standard set forth in *Rotolo v. Borough of Charleroi*, 532 F.2d 920, 922 (3d Cir.1976). This form of failing to state a cause of action is properly remedied by requiring the plaintiff either to cure any deficiency through amendment of his pleadings or, failing that, to dismiss with prejudice. *Id.* at 923.

Failure to state a cause of action in a second sense implies a more fundamental objection, namely, that the allegations, even after attaining the minimal level of specificity required of pleadings, do not reveal a basis on which relief can be granted. In this latter sense, failure to state a claim serves as an adjudication on the merits. Defendants' motions press the issue of failure to state a claim in both of the foregoing senses.

■ Plaintiffs' complaint serves as a starting point to evaluate the defendants' contentions that plaintiffs have failed to state a claim, or, in the alternative, that defendants are immune from liability for the claims stated. In evaluating the claims of *pro se* litigants,[9] the Court is obligated to construe plaintiffs' allegations liberally and, to the extent possible, with an eye toward facilitating an ultimate adjudication on the merits. *See generally Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Plaintiffs set forth a virtual laundry list of statutory and constitutional bases for imposing civil rights liability on defendants.[10] Viewed in isolation, plaintiffs' repeated claims of civil rights deprivations are nothing more than a collection of bare assertions. The Court, of course, must look beyond these assertions to the factual allegations underlying plaintiffs' claims.

At the core of plaintiff's complaint there appears to be four different theories of how the Sheriff and Prothonotary violated the Shipleys' rights. For ease of exposition, the Court will refer to these four theories as: (1) the "due process" claim: (2) the "corrective action" claim; (3) the "misinformation" claim: and (4) the "preferential treatment" claim.

Of these, the due process claim appears to involve no significant dispute of fact among the parties. Basically, plaintiffs' claim boils down to the contention the entry of a default judgment was unconstitutional, because service of process was achieved constructively as provided in Rule 4(f)(4), and defendants had not exhausted other reasonable means of giving the plaintiffs actual notice of the pending action. D.I. 1:¶ 8. The question posed is strictly legal in nature.

---

**9.** The complaint was drafted by an attorney in Pennsylvania.

**10.** This list is summarized in the first paragraph of plaintiffs' complaint as follows:

This action is brought pursuant to the Fourteenth Amendment of the United States Constitution in that Plaintiffs' right of the equal protection of the laws have been violated, Plaintiffs' right to due process has been violated, and the privilege and immunities clauses of Article 4 and the Fourteenth Amendment have been violated. Additionally, this action has been brought pursuant to the Thirteenth Amendment of the United States Constitution to redress the deprivation of rights, which is an immunity secured thereby. This action is also brought pursuant to 42 U.S.C.S., §§ 1982, 1983, 1985(3) and 1986, to secure the rights of Plaintiffs to make and enforce contracts, to be secure in their property as would a white citizen, to enforce the rights of Plaintiffs to inherit, purchase, lease, sell, hold, and convey real and personal property on the same basis as white citizens, to be protected from malicious prosecution, malicious abuse of process, unlawful attachment, and otherwise a deprivation of property, and to be free from conspiracy intended to deprive Plaintiffs of their rights under the equal protection clause of the Fourteenth Amendment, the due process clause of the Fourteenth Amendment, and the privileges and immunities clauses of Article 4 and the Fourteenth Amendment; and further to protect Plaintiffs from conspiracies from persons knowing of Plaintiffs' constitutional rights having been violated and willfully failing to prevent same.
D.I. 1:¶ 1.

The remaining three theories are developed in less detail by the complaint. The corrective action claim charges that both the Prothonotary and the Sheriff, who allegedly had the power to protect the rights of the plaintiffs, were informed that the Shipleys had never been personally served and yet refused to either set aside the default or stop the property sale. D.I. 1:¶ 11. Although ¶ 11 of the complaint is largely conclusory, subsequent submissions by plaintiffs make the factual basis for the Shipleys' assertions clearer.[11]

The misinformation claim set forth in ¶ 9 similarly must be read in light of plaintiffs subsequent submissions. It consists of two components: failure to render assistance to the Shipleys in getting the default judgment set aside, and suggesting to the Shipleys that they see First Federal's attorney. Finally, the Shipleys contend that whites received preferential treatment from the Sheriff and the Prothonotary in the access whites enjoyed to public records and in the "advice" they received to their inquiries. *See* D.I. 60 (Affidavit ¶¶ 5, 6).

In addition to the issues raised in defendants' motion for summary judgment, the Court must also consider matters on which it requested briefing. After receiving defendants' motions and reading Sheriff Walsh's affidavit, it appeared to the Court that there was no dispute as to the factual issues underlying the plaintiffs' constitutional challenge to the use of Rule 4(f)(4) as a means of notice in scire facias proceedings. Accordingly, the Court on its own motion raised the possibility of summary judgment for a non-moving party,[12] whereupon the Court directed the parties to provide additional briefing on three questions.[13]

In response to the constitutional issues posed by this Court, both the Sheriff and Prothonotary disclaimed any interest in defending the constitutionality of the Delaware Superior Court rules.[14] Instead, the

---

**11.** These submissions are:

Memorandum in Support of Plaintiffs' Motion in Opposition to Defendant Walsh's Motion for Summary Judgment, D.I. 59 (*see* attached affidavit); Memorandum in Support of Plaintiffs' Motion in Opposition to Defendant Bane's Motion for Summary Judgment, D.I. 60 (*see* attached affidavit); Shipleys' Answering Brief in Support of Their Motion in Opposition to Defendant Walsh's Motion for Summary Judgment, D.I. 79 (*see* statement of facts); Shipleys' Answering Brief in Support of Their Motion in Opposition to Defendant Bane's Motion for Summary Judgment; D.I. 82 (*see* statement of facts).

In effect, the Court regards these subsequent submissions as amendments to the factual allegations contained in the complaint. *Cf. McGruder v. Phelps*, 608 F.2d 1023, 1025 (5th Cir.1979).

**12.** Although it is unusual for a court to raise the possibility of summary judgment for a non-moving party on an issue not currently before the Court, the Court believes such a procedure is contemplated by Fed.R.Civ.P. 56 and authorized by precedent. *See Viger v. Commercial Insurance Co.*, 707 F.2d 769, 774 (3d Cir.1983); *see generally* J. Moore & J. Wicker, *Moore's Federal Practice* ¶ 56.12 (2d ed. 1982). Moreover, because plaintiffs are not attorneys, they are simply not aware under what circumstances they may be entitled to summary judgment. Two of plaintiffs' submissions, D.I. 59 and 60, liberally construed, represent demands for judgment as a matter of law and therefore, could be regarded as requests for summary judgment.

**13.** The questions on which the Court request briefing are as follows:

1. Are there disputed issues of fact that preclude the Court's determination as a matter of law whether constructive service as provided in Delaware Superior Court Rule 4(f)(4) satisfies the requirements of the Due Process Clause of the Fourteenth Amendment?

2. Does the fact that the default judgment, entered in the state court action that is the subject of this lawsuit, was vacated, or the fact that the plaintiffs have filed an Answer in that action, preclude the Court from considering the constitutional issue set forth in Question 1?

3. In light of the Supreme Court's decision in *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), does constructive service, as provided in Delaware Superior Court Rule 4(f)(4), satisfy the requirements of the Due Process Clause of the Fourteenth Amendment?

**14.** The Sheriff, through, his counsel, Theodore F. Sandstrom, wrote to the Court:

In response to the Court's letter to all parties dated June 25, 1985, defendant Walsh upon review, declines to submit a formal brief to those questions raised by the Court. (Letter dated July 11, 1985).

The Prothonotary, through its attorney, Brian A. Sullivan, assistant county attorney, wrote to the Court:

Prothonotary and the Sheriff chose to rely on their defenses of qualified and absolute immunity to plaintiffs' action, adding that if the rules in question were declared unconstitutional, they would conform their conduct to the Court's ruling.

The Court expressly directed the parties' attention to the irrelevancy of the immunity defense to questions of injunctive relief at oral argument on May 30, 1985.[15] Apparently the defendant public officials have made a conscious choice not to contest injunctive relief for the Shipleys.

■ Defendants' calculated decision to refrain from defending the constitutionality of the procedural rules on which they relied, presents this Court with a fundamental question of whether they are proper parties to defend the constitutionality of Rule 4(f)(4). Article III of the Constitution limits the exercise of federal jurisdiction to "cases and controversies." Justiciability, as this requirement is sometimes referred, demands that federal courts resolve only questions arising out of the real interest of adverse parties. *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971); *see also Flast v. Cohen,* 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968).

The requirement of justiciability, of course, does not require this Court to consider whether a more suitable set of defendants exists who would choose to defend the state rules of civil procedure in question more vigorously; rather, the requirement is met if the "named defendants ... meet the prerequisites to adjudication in a federal suit." *See Finberg v. Sullivan,* 634 F.2d 50, 53 (3d Cir.1980) (en banc).

In this particular case, there can be no question but that the parties' interests are genuinely adverse. Failure of defendants' immunity defense could lead to damage liability if it is determined that defendants are not entitled to immunity. Although the defendants have declined the Court's invitation to brief the constitutional question presented here, the Court notes for the record the failure of the Sheriff and Prothonotary to enter into a stipulation consenting to the use of procedures that would avoid the difficulties that were encountered in this case.[16] Hence, there is no basis on which to conclude that the present controversy is either feigned or collusive.

■ The Court believes that defendants' status as proper parties must ultimately turn on a subordinate issue, namely, the capacity in which these public officials have been sued.[17] The Sheriff or the Prothono-

---

The Prothonotary respectfully submits that she is not in a position to defend the constitutionality of Delaware Superior Court Rule 4(f)(4).

(Letter dated July 11, 1985).

In addition to these two responses, the Court received correspondence from the two private defendants. First Federal, through its attorney, Frank Miller, argued that the Court should abstain from making a decision. (Letter dated July 15, 1985). The issue of abstention is addressed later. Defendant Green, through its attorney, John Elzufon, argued that it was unnecessary for the Court to decide the constitutional issue because the private defendants also intended a motion for summary judgment on grounds that the private defendants were also immune from damage liability. Defendants' argument ignores the fact that plaintiffs may be entitled to injunctive relief.

**15.** Oral argument was held prior to the requested supplemental briefing on the constitutional issues.

**16.** If defendants' indifference to the prospect of injunctive relief could divest this Court of juris-

diction in constitutional questions properly before it, then a calculated policy of passive resistence would leave plaintiffs without any recourse for prospective relief.

**17.** This issue is also of fundamental importance in determining the merits of defendant Bane's and Walsh's motions for summary judgment based on immunity. *See* infra Section V. There is no immunity for officials sued in an official capacity, *Estate of Bailey v. County of York,* 768 F.2d 503, 508 n. 5 (3rd Cir.1985), since a verdict would lie against the entity, *see Brandon v. Holt,* — U.S. ——, 105 S.Ct. 873, 880, 83 L.Ed.2d 878 (1985); *Estate of Bailey v. County of York,* at 508; *see also Meding v. Hurd, supra,* 607 F.Supp. at 1101 (claims barred by principles of res judicata against town are also barred against town officials acting in an official capacity); and there is no good faith defense for public entities who are subdivisions of the state. *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1979).

tary can be sued in either an individual or an official capacity. Several factors support an inference that they are sued here in an official capacity. The Shipleys' complaint names among the defendants, Michael P. Walsh, Sheriff of New Castle County, Delaware and Margo Ewing Bane, Prothonotary of New Castle County, Delaware. D.I. 1. In addition, the complaint lists their addresses as the "Public Building, Eleventh and King Street." Generally, if a party is named as a defendant along with his public office, then it is assumed that the party is being sued in an official capacity. *See Restatment (Second) of Judgments* (1980); *see generally Meding v. Hurd*, 607 F.Supp. 1088, 1101 (D.Del.1985). Plainly the due process claim which challenges the validity of a Delaware Rule of Civil Procedure is a claim typically brought against an official acting in an official capacity.

Other portions of the complaint, however, indicate that the public officials may have been sued in an individual capacity as well. Claims of isolated incidents of racial discrimination or the existence of a conspiracy to deprive plaintiffs of equal protection of the law are typically not actionable against a county because they do not reveal a custom or policy of the particular county, *see Monnell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *City of Oklahoma v. Tuttle*, — U.S. —, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); and hence, are not actionable against an official sued in his official capacity. Second, plaintiffs seek punitive damages which would not be available in a suit brought against an official acting solely in an official capacity. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (punitive damages are not recoverable against a town in an action brought pursuant to 42 U.S.C. § 1983). Finally, defendants in interposing an immunity defense appeared to have assumed that plaintiff has sued each of the public officials in an individual capacity.[18]

Taking into account the fact that the Shipleys as *pro se* plaintiffs probably do not understand the distinction between individuals sued in an individual and official capacity, the Court must give their claims a liberal construction. The due process claim which could state a cause of action against the Sheriff and Prothonotary in either their individual or official capacities will be construed to allege an action against each official in both capacities, while the claims alleging racial discrimination will be deemed to be against the officials in their individual capacity exclusively.

Having determined that the public officials are sued both in an individual and official capacity with respect to the due process claim, it remains only to declare that public officials who intend to rely on statutory or judicial authority when acting in an official capacity are proper parties to constitutional challenges to actions taken pursuant to that authority. *Finberg v. Sullivan, supra,* 634 F.2d at 54 (*citing Ex Parte Young,* 209 U.S. 123, 157, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908)) (A public official, sued in an official capacity, who "by virtue of his office has some connection with the enforcement" of the offending provision, is a proper party to an action challenging the constitutional validity of that provision.):

> This conclusion is not altered by the fact that the duties of the prothonotary and the sheriff are entirely ministerial. Under *Ex Parte Young* the inquiry is not into the nature of an official's duties but into the effect of the official's performance of his duties in plaintiff's rights.
>
> . . . .
>
> Once the prothonotary and the sheriff have relied on the authority conferred by the [state's] procedure to work an inquiry to the plaintiff, they may not disclaim interest in the constitutionality of these procedures.

*Id.*

Accordingly, the Court finds that the Sheriff and Prothonotary are proper

---

**18.** *See id.*

parties to defend the constitutional question now before the Court.[19]

### A. Mootness

■ Another aspect of the issue of justiciability, mootness, concerns whether a controversy presents issues, the resolution of which will entitle one party to some form of judicial relief that will have a concrete and conclusive effect on the parties' legal interests. *See California v. San Pablo & T.R.R.*, 149 U.S. 308, 314, 13 S.Ct. 876, 878, 37 L.Ed. 747 (1893). The issue of mootness arises in this case because the default judgment against the Shipleys has been set aside and the Shipleys have answered the original complaint in those proceedings. These actions raise the possibility that the Shipleys have effectively waived any defense in the state action based on constitutionally defective service of process.

Regardless of the effect given to the Shipleys' answer by the state court, neither the setting aside of the default judgment or the Shipleys' filing of an answer render the constitutional issue presented here moot. Although the constitutional issue raised in the federal and state actions are the same, the underlying causes of action are different. The federal action seeks redress for injuries allegedly sustained as a result of the use of an allegedly unconstitutional practice. The same constitutional issue arises in the state action solely as a defense to the pending mortgage foreclosure. The presence, absence, or even waiver of the constitutional issue in the mortgage foreclosure action simply does not affect the availability of damages for past constitutional injuries or of prospective relief against future injuries.

Defendants have argued that it may be unnecessary to decide the constitutional issue in view of their pending legal defenses to damage liability. If such defenses were successful, the only basis for considering the question would be for purposes of entering injunctive relief on behalf of the Shipleys. The Shipleys, however, may not be entitled to either injunctive relief or declaratory relief, if, as it now appears, the problem of service has been cured in the state court proceedings. Any declaration of their rights under such circumstances would amount to an advisory opinion by this Court.

Courts have deviated from the strict rules against entertaining what might otherwise be considered a moot controversy whenever the issue raised created a reasonable expectation of repetition without an opportunity for judicial review. *See Southern Pacific Terminal Co. v. ICC.*, 219 U.S. 498, 515, 31 S.Ct. 279, 383, 55 L.Ed. 310 (1911); *Finberg v. Sullivan, supra*, 634 F.2d at 55; *Dionne v. Bouley*, 757 F.2d 1344, 1348 (1st Cir.1985). The facts in this case appear to present such a situation. The defendant First Federal has initiated a mortgage foreclosure against the Shipleys three times. Moreover, it appears that First Federal uses the pending foreclosure proceedings as a means to encourage the mortgagor to cure any delinquency in payments, but once the payment is made, First Federal proceeds to dismiss the action, precluding a resolution of the constitutional question. Finally, defendants have little incentive to obtain a decision on the merits of the constitutional issue within the context of the mortgage foreclosure proceedings. Although defects in service may provide a means to obtain a temporary dismissal of the foreclosure proceeding, many defendants will choose to waive defects of service and pursue the substantive merits of the action. Thus, despite a significant question regarding the constitutional adequacy of service, the question is likely to remain unanswered if a defendant in the state court proceedings is relegated to

**19.** In *Finberg,* the Third Circuit also considered and subsequently rejected the idea that the Justices of the Supreme Court of Pennsylvania, who were ultimately responsible for promulgation of Pennsylvania's Rules of Civil Procedure, were required to be joined as necessary parties. Similarly, the Court in this instance cannot say that Justices of Delaware's Supreme Court are necessary parties to this action merely because the constitutionality of one of the Delaware's Superior Court Rules of Civil Procedure has been challenged.

bringing it up in the context of a fore-closure action. Accordingly, the Court concludes that the present case is not moot.

### B. Abstention

█ In response to the Court's letter of July 25, 1985, First Federal suggested that the district court abstain from deciding the constitutional issue raised in plaintiffs' complaint in the federal action because it is identical to one raised in the Shipleys' answer in the state court proceeding. (Miller letter dated July 15, 1985). Abstention is a multifaceted doctrine of "our federalism" in which federal courts, as a matter of equitable self-restraint, stay the exercise of jurisdiction pending resolution of state law issues that may obviate the need for constitutional adjudication, *see Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), or pending the completion of concurrent proceedings in a state judicial forum when a decision by the federal court would interfere with the state's judicial administration of its legitimate activities as a sovereign. *See Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Presumably, First Federal means to raise the possibility of *Younger*-type abstention, since the present controversy does not involve any doubtful issues of state law.

If the merits of abstention turned in any way on defendants' conduct in raising the issue, this Court would summarily deny the request. The issue of abstention was implicitly before the Court when the plaintiffs moved the Court to stay the state court proceedings.[20] In response to the Court's request for briefing on *Younger, see* Order dated May 10, 1985, First Federal joined in a letter filed by another defendant stating that the defendants would not oppose plaintiffs' request for a stay. *See* Miller letter dated May 28, 1985. On May 30, 1985, First Federal announced in open court that it was prepared to enter a stipulation with the Shipleys staying the state court proceedings. Only after the Court requested

briefing on the constitutional issue did First Federal suffer a sudden change of heart regarding not only its willingness to stipulate to a stay of the state court proceedings but also its willingness to proceed with the federal cause of action.

█ The propriety of abstention, however, does not rest upon a defendant's conduct in raising the issue, but rather on self-imposed policies of judicial restraint. Thus, it is incumbent upon this Court to determine whether abstention is appropriate. The general rule, of course, is that "the pendency of a state court proceeding is [no] reason for a federal court to decline to exercise jurisdiction established by Congress." *Harris v. Pernsley*, 755 F.2d 338, 345 (3d Cir.1985); *cf. Kline v. Burke Construction Co.*, 260 U.S. 226, 230, 43 S.Ct. 79, 81, 67 L.Ed.2d 226 (1922). Moreover, a federal court is warranted in declining to exercise congressionally conferred jurisdiction only in exceptional circumstances. *See County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 463 (1959).

> Congress imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims. Plainly, escape from that duty is not permissible merely because state courts also have the solemn responsibility equally with the federal courts, "... to guard, enforce, and protect every right granted or secured by the Constitution of the United States...."

*Zwickler v. Koota*, 389 U.S. 241, 247, 88 S.Ct. 391, 395, 19 L.Ed.2d 244 (1967).

█ *Younger v. Harris* defined conditions when it is appropriate for a federal court to depart from the foregoing principles and abstain. While, as originally conceived, the *Younger* doctrine was limited to federal adjudication of constitutional questions during the pendency of state criminal proceedings, the Supreme Court has ex-

---

**20.** Presumably the basis for such a stay would be cases such as *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1967) and

*Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972).

tended the *Younger* doctrine to some state civil proceedings as well. *See Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (disciplinary proceeding over which state supreme court exercised ultimate authority); *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (child custody proceedings); *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (state civil action to recover welfare payments); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (state civil contempt proceedings); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (state initiated proceedings under civil statute restricting the showing of obscene films). These cases have generally been construed to hold that abstention is appropriate in the face of pending state civil actions when the state is a party in the underlying state court proceeding and the state court proceedings were initiated by the state. *Harris v. Pernsley, supra,* 755 F.2d at 344; *Williams v. Red Bank Board of Education,* 662 F.2d 1008, 1019 (3d Cir. 1981); *accord Traughber v. Beauchane,* 760 F.2d 673, 680 (6th Cir.1985). Because the underlying state action did not involve public officials, and because it was initiated by First Federal, a private litigant, both conditions for abstention are absent in this situation. The mere fact that the Prothonotary and the Sheriff are named as defendants in the federal court action is simply not an adequate reason for abstaining.

*C. Eleventh Amendment*

■■■■ The Eleventh Amendment bars the exercise of jurisdiction by the federal courts in actions at law or equity brought by private citizens against a state or any of its agencies. *Florida Department of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 682, 102 S.Ct. 3304, 3313, 73 L.Ed.2d 1057 (1982). For purpose of the Eleventh Amendment, a state official acting in an official capacity is also protected by the amendment's grant of immunity from suit

in federal court except in actions for injunctive relief alleging that the state official's actions violate the federal constitution. *See Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed.2d 714 (1908). Although the Fourteenth Amendment conferred on Congress the power to set aside the immunity granted to states under the Eleventh Amendment, *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), Congress did not eliminate the immunity enjoyed by states in passing § 1983. *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978).

The public official defendants have not sought to raise a defense under the Eleventh Amendment. The Court, however, may raise it as an issue *sua sponte* because the amendment goes to the Court's subject matter jurisdiction. *Edelman v. Jordan,* 415 U.S. 651, 677–78, 94 S.Ct. 1347, 1362–63, 39 L.Ed.2d 662 (1974). The Court believes the Eleventh Amendment concerns are implicated in plaintiffs' action insofar as it seeks to maintain an action against the Sheriff and Prothonotary acting in their official capacities.

■■■■ Typically, the Eleventh Amendment does not extend to suits against counties or municipalities, *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). Moreover, there is no good faith (absolute or qualified) immunity under § 1983 for county officials acting in an official capacity since a suit against a county official acting in an official capacity is one against the county he represents, and counties are not entitled to assert a defense of qualified immunity. *See Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).[21] Thus, it would appear that the county could be held liable for any constitutional injury to the plaintiffs caused by the Sheriff and Prothonotary, acting in an official capacity as county officials.

■■■■ While recognizing the foregoing principles, the Court nevertheless is

---

**21.** *See supra,* note 17.

convinced that that part of plaintiffs' action which seeks damages against the Prothonotary and the Sheriff acting in their official capacities is barred by the Eleventh Amendment. Although technically employed by New Castle County, both the Prothonotary and the Sheriff act in a ministerial capacity under the laws of the State of Delaware in connection with scire facias proceedings. *See* 10 *Del.C.* § 521 (prothonotary is to function as clerk of the Superior Court in which he serves); §§ 2303, 2310, 2311 (prothonotary must record judgments, certify issuance of scire facias sur mortgage to recorder, and certify sheriff's return on levari facias); §§ 5061, 5064 (directing sheriff to perform certain duties in connection with scire facias sur mortgage proceedings). Because the Court finds that county officials who are defendants in this action should be regarded as officers of the state in scire facias proceedings, then the Eleventh Amendment bars an action for damages against these officials in their official capacity. *See Laskaris v. Thornburgh,* 661 F.2d 23, 25 (3d Cir.1981).[22]

### D. Pendent Jurisdiction

■ Plaintiffs' complaint does not purport to raise any state law claims that would require this Court to consider the exercise of pendent jurisdiction. However, in appearances before the Court, the plaintiffs have appeared to indicate a belief that

this Court will address the merits of the mortgage foreclosure action currently pending before the state court. In addition, plaintiffs have filed affidavits with the Court alleging conclusory terms that the Sheriff and Prothonotary violated the laws and court rules of the State of Delaware.[23] To avert any confusion, the Court wishes to emphasize that it has not, nor will it, acquire jurisdiction over the matters currently being litigated in the state court.[24]

■ Normally, there would be no question that a federal court has no jurisdiction to consider a mortgage foreclosure action between citizens of the same state; such cases present issues of state law within the exclusive jurisdiction of a state's court. In actions properly before a federal court, a federal court can, in its discretion, exercise pendent jurisdiction over state law claims whenever a relationship between the federal claims and the asserted state law claims exists suggesting that the claims comprise a single case. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 752, 86 S.Ct. 1130, 16 L.Ed. 218 (1966).

■ This Court declines to exercise pendent jurisdiction in this case because to do so would undercut the rule stated in *Gold-Washing and Water Co. v. Keyes,* 96 U.S. 199, 6 Otto 199, 24 L.Ed. 656 (1877), in which it was held that an action in state court in which the defendant asserted a defense based on a federal claim did not

22. In the alternative, the Court holds as a matter of law that an action based on plaintiffs' allegations of a denial of due process could not lie against the County because the official conduct of the Sheriff and the Prothonotary do not reflect the policy or custom of the County. *See Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Accordingly, an action against the county officials, acting in an official capacity, based on similar allegations will not lie. *Cf. Brandon v. Holt, supra,* —— U.S. at ——, 105 S.Ct. at 880 (actions against entity and officials acting on behalf of entity present identical claims).

23. The plaintiffs averred:
 8. Defendant Bane did not enter judgment against the Plaintiffs in accordance with the laws and Court rules of the State of Delaware.
 9. Defendant Walsh proceeded to execute against the Plaintiffs in connection with their

real estate in violation of the laws and Court rules of the State of Delaware.
D.I. 59 (Affidavit) & D.I. 60 (Affidavit).

24. It is not entirely clear to the Court whether citizens of Delaware have a private right of action under state law against public officials whose conduct does not conform to state law. Accordingly, plaintiffs' averments in their affidavits may state a wrong for which there is no cause of action at law. Moreover, the Eleventh Amendment renders this Court powerless to entertain equitable claims challenging the sufficiency of constructive service under Delaware law in connection with the scire facias sur mortgage proceeding. *See Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 920–21, 79 L.Ed.2d 67 (1984). Thus, plaintiffs' state law claims against the Sheriff and the Prothonotary appear uncertain at best.

render the action removable to federal court. The Shipleys would not have been permitted to remove the mortgage foreclosure proceeding presently in state court to federal court based on their assertion in the state court action of a defense under the United States Constitution. Similarly, they should not be able to effect "removal" of their state claims through the Court's pendent jurisdiction by bringing an affirmative claim in federal court on the basis of the constitutional defense set forth in their answer in state court. Parties cannot use pendent jurisdiction to escape congressionally established limitations on federal jurisdiction. *Cf. Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 374–75, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978) (pendent jurisdiction cannot be used to circumvent rule of complete diversity in diversity cases).

### III. DUE PROCESS CLAIM

Plaintiffs claim that the Prothonotary's entry of judgment by default on the scire facias sur mortgage deprived them of property without due process. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

Although the Due Process Clause imposes specific obligations on state officials in depriving individuals of property interests, neither it nor any other part of the Constitution defines or creates those interests. Rather, property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law— rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Under Del-

aware law, record title ownership is a cognizable property interest, *Brown v. Federal National Mortgage Association,* 359 A.2d 661, 663 (Del.1976). In *Gelof v. First National Bank of Frankford,* 373 A.2d 206, 208 & n. 3 (Del.1977), the Delaware Supreme Court held the concept of property interest also included equitable claims in title and liens of record. Indeed both the *Brown* and *Gelof* decisions held that 10 *Del.C.* § 5601 (the provision governing scire facias sur mortgage) was constitutionally deficient in failing to require notice be given to individuals who had interests that fell within the broader meaning of property as construed by the Delaware Supreme Court.

Nor can it be doubted that the Shipleys were deprived of an interest in their property through entry of the default judgment. Although the Shipleys were never evicted from their property, or denied access to their premises, their property interests were adversely affected in at least two ways. First, upon entry of judgment, their property became subject to levy by sale. Second, their position as litigants in the scire facias proceeding became less favorable in having to move to set aside the default.

While both *Brown* and *Gelof* establish that the scire facias proceeding implicated the Shipleys' property interests, mandating some sort of notice to the Shipleys, the decisions do not purport to address what constitutes adequate notice. In this case, the Sheriff and Prothonotary claim to have effected service pursuant to Rule 4(f)(4) which provides "in actions begun by scire facias, 2 returns without service of 2 consecutive writs shall constitute legal and sufficient service." In effect, Rule 4(f)(4) provides for constructive service: once sufficient effort has been expended to make the defendant aware of the pending action then the defendant is deemed to have been served. According to the Sheriff, he or his deputies visited the Shipley home at least ten times, all to no avail. The Sheriff never posted a copy of the writ on the Shipleys' property, nor sent a copy of it to the Shipleys by mail. Understandably the

Shipleys failed to respond to the writ for the simple reason they never received it. Pursuant to Del.Sup.Ct.R.Civ.P. 55(b)(1), the Prothonotary was authorized to enter a default judgment twenty days after successful completion of service if defendant failed to respond.[25]

The narrow constitutional question, then, is whether constructive service pursuant to Rule 4(f)(4), under the circumstances, comports with the fundamental requirements of due process. The Court finds that it does not.

■ The requirements of due process do not vary depending on a controversy's characterization as either *in personam* or *in rem. See Mullane v. Central Hanover Bank & Trust Co., supra*, 339 U.S. at 312, 70 S.Ct. at 656. Notice must, in either case, be reasonably calculated to apprise interested parties of the pendency of the action. *Id.*, 339 U.S. at 314; 70 S.Ct. at 657.

The applicability of the holding in *Mullane* to mortgage foreclosure proceedings was recently addressed by the Supreme Court in *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed. 180 (1983). In that case, the court held that a county's use of publication as a method of giving a mortgagee constructive notice of the sale of his mortgagor's property did not meet the requirements of due process, because the county had at its disposal the necessary information to effect actual notice, with reasonable probability, by mail. *Id.*, 462 U.S. at 798, 103 S.Ct. at 2711. Although *Mennonite Board of Missions* concerned constructive notice by publication rather than constructive service, the same factors which led the Court to conclude that constructive notice by publication without separate notice by mail was constitutionally deficient compel a similar rejection of constructive service as a substitute for actual notice in this case. While

due process does not always require actual notice, it does favor it whenever possible. Since the mails provide a feasible means of actual notice when the identity and address of a party are known, *Mennonite Board of Missions* suggests that mailed notice is an essential adjunct to any constructive notice provision.

In this case, the Prothonotary and the Sheriff knew the Shipleys' address but remained content to rely on personal service even after it became apparent to both officials that personal service had failed to provide the Shipleys with actual notice of the pending action. Under the circumstances, "the County's use of ... less reliable forms of notice [was] not reasonable where, as here, 'an inexpensive and efficient mechanism such as mail service [was] available.'" *Id.*, 462 U.S. at 799; 103 S.Ct. at 2711 (*quoting Greene v. Lindsey*, 456 U.S. 444, 455, 102 S.Ct. 1874, 1881, 72 L.Ed.2d 249 (1982).

The Sheriff did ultimately post the Shipleys' property with an advertisement of public sale as provided in 10 *Del.C.* § 4973 upon issuance of a writ of levari facias. But, from a constitutional perspective, the advertisement was too little too late. The advertisement was too late in that it was not posted until well after the default judgment had been entered. Moreover, it was too little in that it failed to provide plaintiffs with notice of how to either redeem the property or how to initiate proceedings to contest the sale. *See Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 13–15, 98 S.Ct. 1554, 1562–63, 56 L.Ed.2d 30 (1978) (public utility's notice of termination to a customer failed to satisfy due process because notice did not disclose process for contesting terminations); *cf. Finberg v. Sullivan, supra*, 634 F.2d at 62 (failure of county official to notify judgment debtor of the existence of exemptions

---

**25.** In this particular case, the Prothonotary, as was her practice when service had been effected constructively, did not wait twenty days after the time that service could be deemed to have occurred pursuant to Rule 4(f)(4). Judge Martin of the Delaware Superior Court subsequently

held that the Prothonotary's practice reflected a mistaken interpretation of the effect of Rule 4(f)(4) and accordingly, the Prothonotary's previous entry of a default judgment was set aside. *First Federal Savings & Loan Association of Delaware v. Shipley*, 482 A.2d 766 (Del.Sup.1984).

under state and federal law in connection with creditors' garnishment of debtor's bank account did not satisfy notice requirements of due process). Thus, posting the advertisement did not discharge the County's obligation to provide the Shipleys notice in connection with the foreclosure proceeding.

█ For the foregoing reasons, the Court concludes that a mortgagor, deemed to have been constructively served is denied due process under Delaware law in a scire facias proceeding unless an effort is made to provide the mortgagor actual notice by mail prior to entry of a default judgment.[26]

## IV. IMMUNITY FROM CIVIL DAMAGE LIABILITY

█ The Sheriff and Prothonotary claim that they are immune from plaintiffs' claims for damages under established doctrines of public official immunity.[27] Although the doctrine of immunity for public officials has its foundations in the common law, the Supreme Court has refined the standards governing its application in response to the burgeoning number of suits against public officials that has followed the dramatic increase in civil rights and constitutional tort litigations over the past generation. In its present form, the immunity enjoyed by public officials is evaluated under a bifurcated standard that provides for absolute immunity in some cases and qualified immunity in others.

Absolute immunity is a more potent form of immunity than any of its cousins because it discharges an official completely from all liability resulting from the exercise of official power without regard to negligence, malice, or bad faith on the part of the official in performing his duties.

Generally speaking, this exceptional form of immunity is limited to special considerations regarding the type of function performed by officials who enjoy such immunity. *Mitchell v. Forsyth,* —— U.S. ——, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

█ Qualified immunity, as its name suggests, is immunity subject to condition. A public official is entitled to qualified immunity so long as his conduct does not violate clearly established law at the time an action occurred. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The doctrines of absolute and qualified immunity apply to actions brought pursuant to civil rights provisions, including 42 U.S.C. § 1983. *See, e.g., Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (absolute immunity enjoyed by prosecutor); *Wood v. Strickland,* 420 U.S. 309, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) (school officials subject to qualified immunity); *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed.2d 1019 (1951) (absolute immunity enjoyed by state legislator).

█ The immunity enjoyed by judges and other officials performing quasi-judicial functions is a frequently cited example of absolute immunity. *Mitchell v. Forsyth, supra,* —— U.S. at ——, 105 S.Ct. at 2813–14. It is important to emphasize the breadth of the immunity enjoyed by judges. Judicial acts taken in error, or with malice, or even in excess of authority are all subject to immunity, and thus, can never form the basis for a plaintiff's action against a judge. *Stump v. Sparkman,* 435 U.S. 349, 356–57, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978).

Both the Prothonotary and the Sheriff contend that they are entitled to absolute

---

**26.** This is not to say that mailed notice is a satisfactory substitute for personal service when Delaware law prescribes otherwise. But notice by mail is a minimum constitutional precondition to a scire facias proceeding when actual notice by personal service has failed. Oddly enough it appears that tenants in an eviction proceeding are entitled to greater notice under Delaware law than the mortgagor subject to foreclosure. The notice given to tenants pursuant to 25 *Del.C.* § 5706 provides a concrete

model of the type of notice mortgagors should receive when personal service fails to provide actual notice.

**27.** Public officials cannot assert a defense based on immunity as a bar to prospective injunctive relief. *See Pulliam v. Allen,* 466 U.S. 522, 104 S.Ct. 1970, 1981, 80 L.Ed.2d 565 (1984); *DiRuggiero v. Rogers,* 743 F.2d 1009, 1021 (3d Cir. 1984).

immunity because the gist of the Shipleys' complaint concerns actions in which the Sheriff and the Prothonotary were acting in a quasi-judicial capacity. Judicial immunity has been extended to clerks and prothonotaries when the clerk is "performing a ministerial function at the direction of [a] judge," *Waits v. McGowan*, 516 F.2d 203, 206 (3d Cir.1975); *accord Slotnick v. Garfinkle*, 632 F.2d 163, 166 (1st Cir.1980); or performing ministerial duties of a judicial nature pursuant to a statute. *See Smith v. Rosenbaum*, 460 F.2d 1019 (3d Cir.1972); *accord Scott v. Dixon*, 720 F.2d 1542 (11th Cir.1983), *cert. denied*, —— U.S. ——, 105 S.Ct. 122, 83 L.Ed.2d 64 (1984).

 The immunity enjoyed by a clerk only extends to a narrow range of activities which are truly judicial in nature. *Williams v. Wood*, 612 F.2d 982, 985 (5th Cir. 1980). With respect to his other official activities, the clerk is only entitled to qualified immunity. *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir.1981).

 These same principles also apply to sheriffs. Sheriffs enjoy immunity when they act in either a ministerial capacity or pursuant to the orders of a judge. *See Slotnick v. Garfinkle, supra*, 632 F.2d at 166 (1st Cir.1980).

Since the scope of the Prothonotary's and Sheriff's immunity depends on the type of authority the defendant was exercising at the time of plaintiffs' alleged injuries, it is necessary to evaluate defendants' claims of immunity against the type of claims plaintiffs have alleged as a basis for recovery.

### A. *Plaintiffs' Due Process Claim*

 Plaintiffs seek to hold the Prothonotary and Sheriff liable for damages for entering a default judgment when service of the writ on which the judgment was entered was constitutionally defective. Since under Del.Sup.Ct.R.Civ.P. 55(b)(1), the Prothonotary is given the authority to enter a default judgment in scire facias sur mortgage proceedings, she was functioning in a judicial capacity when she entered the default judgment against them. Accordingly, she is entitled to absolute immunity regardless of whether her actions were malicious and plaintiffs' claim for damages on this count must fail.

 The Sheriff's only connection to the entry of the default judgment against plaintiffs was his role in attempting to serve the writ. There is no evidence in the record inconsistent with the Sheriff's own affidavit that he visited the Shipleys' home numerous times. He returned two writs to the Prothonotary bearing the notation *non sunt inventi*. Because the Sheriff was acting pursuant to the judicial writ in returning them to the Prothonotary with the notation *non sunt inventi*, he too is entitled to absolute immunity and accordingly, plaintiffs' claim for damages against the Sheriff based on a violation of their due process rights must also fail.

### B. *The Corrective Action Claim*

Plaintiffs contend that the Prothonotary and the Sheriff failed to set aside the default judgment and impending sale after plaintiffs had explained to them that they never received actual notice of the mortgage foreclosure proceeding prior to entry of the default judgment. Plaintiffs' theory is fatally flawed in at least two respects. First, it perpetuates a confusion regarding the distinction between the legal effect of Rule 4(f)(4) on the one hand, and actual notice on the other. Although the Shipleys may have informed the public officials that they did not receive actual notice, this information was not relevant to either the Prothonotary or the Sheriff because of their belief that service in accordance with Rule 4(f)(4) was all that was needed to enter the default judgment in the first place. Ultimately the Sheriff and Prothonotary proved to be wrong in their legal conclusion. At the very least, however, they would be entitled to qualified immunity for their actions because at the time that the events herein transpired, they were entitled to presume that Rule 4(f)(4) was entirely valid.

There is a second flaw to this particular theory of recovery as it applies to the Sheriff and the Prothonotary. It assumes that the Sheriff and the Prothonotary had the power to set aside the sale and default

judgment. To the extent that this proposition is false, the plaintiffs have failed to state a claim for relief under this count. While the Court finds this proposition highly dubious, it need not resolve its doubts for even if it were true, the power to set aside the judgment is essentially one that is judicial in nature. Thus, assuming that the defendant public officials possessed the power imputed to them, it would be judicial power for the exercise of which they are entitled to absolute immunity. Hence, neither the Sheriff nor the Prothonotary can be held liable for damages under plaintiffs' second theory.

### C. The Misinformation Claim

■ The Prothonotary and the Sheriff cannot claim judicial immunity in response to plaintiffs' allegation that they were somehow misinformed by the Sheriff and Prothonotary in the advice they received to consult with the opposing attorney. D.I. 59 (Affidavit ¶ 3).[28] The defect in this allegation is that it fails to establish a claim for which either public official could be held liable. A party is free to accept or reject advice when it is offered. Having accepted it, plaintiffs cannot make it the basis of a civil rights claim merely because it did not work out. If there was any discernible merit in plaintiffs' claim, the Court would be inclined to dismiss a claim without prejudice as provided in *Rotolo v. Borough of Charleroi*, 532 F.2d 920 (3d Cir.1976). Here, however, the Court concludes that there are no set of facts on which plaintiffs' allegation would entitle him to recovery and accordingly, it is dismissed with prejudice with respect to the Sheriff and Prothonotary. *See Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### D. The Preferential Treatment Claim

■ The Sheriff and Prothonotary are not entitled to either absolute or qualified immunity in connection with plaintiffs' allegation that whites received preferential treatment as compared with blacks in the defendants' respective public offices. Admittedly, the claim is set forth as a conclusory allegation without any additional supporting facts. D.I. 59 (Affidavit ¶¶ 5 and 6).[29]

As such, the claim does not achieve the requisite degree of specificity in pleading that is required in civil rights actions. *See Hall v. Pennsylvania State Police*, 570 F.2d 86 (3d Cir.1978). However, this case is well beyond the pleading stages and the Prothonotary and the Sheriff have offered affidavits disputing plaintiffs' allegations. D.I. 67 (Affidavit of Margo Ewing Bane); D.I. 68 (Affidavit of Michael P. Walsh).

While it is undoubtedly true that the moving party bears the burden of demonstrating the absence of any material issue of fact under Rule 56(c), this burden presumes that the non-moving parties' allegations are strong enough to support an inference that there are triable issues of fact. In this case, plaintiffs have offered neither evidence nor specific factual allegations to create a disputed issue of fact. In failing to do so, the non-moving parties have implicitly reaffirmed their unamended pleadings. In view of the deficiencies therein, the Court will enter summary judgment in favor of the Sheriff and the Prothonotary on plaintiffs' claim that whites received preferential treatment.

### V. CONCLUSION

This motion for summary judgment represents a final adjudication of the plain-

---

**28.** Paragraph 3 reads as follows:

Defendants Bane and Walsh, knowing that it would not be in the best interest of the Plaintiffs, consistently referred Plaintiffs to Defendant Green to resolve the sale of Plaintiffs [sic] real estate as opposed to directing Plaintiffs to the appropriate Court bodies.

**29.** Paragraphs 5 and 6 read as follows:

5. Defendants Bane and Walsh have not treated white individuals in the same or similar situation in this manner, specifically mis-directing those individuals as they did the Plaintiffs.

6. Defendants Bane and Walsh embarrassed and humiliated the plaintiffs by failing to show them public records concerning the judgment and action against them to which Plaintiffs were entitled under state and federal law and did this solely because the Plaintiffs were of the black race and indicated to the Plaintiffs that white individuals similarly situated were not treated in this matter.

tiffs' claims against the defendant Michael Walsh and defendant Margo Ewing Bane. An injunction will issue enjoining the Sheriff from returning to the Prothonotary an alias writ of scire facias *non-sunt inventi* without also certifying to the Prothonotary that a letter has been sent by certified mail to the individual for whom service is sought and enjoining the Prothonotary from accepting an alias writ of scire facias *non-sunt inventi* without having received certification from the Sheriff that a letter has been sent by certified mail to the individual for whom service is sought. Although technically the injunction applies only to writs involving the Shipleys, the Prothonotary and Sheriff would be well advised to reconsider some of their current practices.

The Court finds that plaintiffs are precluded from recovering any damages from the Sheriff and the Prothonotary with respect to the claims raised in their complaint.

An Order will enter consistent with this Opinion.